

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

Temuri Kuprashvili, ("T.K."),

    *Petitioner,*

    v.

Bryan FLANAGAN, in his official capacity as
Acting Field Office Director of New York,
Immigration and Customs Enforcement
("ICE"); Judith ALMODOVAR, in her official
capacity as Acting Director of ICE's
Enforcement and Removal Operations
("ERO"); Kristi NOEM, in her official capacity
as Secretary of the United States Department of
Homeland Security ("USDHS"); and Pamela
BONDI, Attorney General ("AG") and Chief
Law Enforcement for the U.S. Department of
Justice ("USDOJ"),

    *Respondents.*

---

Civil Action No.:

**25 CV 5268**

**VERIFIED PETITION FOR**
**WRIT OF HABEAS CORPUS**



## INTRODUCTION

Petitioner, Temuri Kuprashvili ("T.K.") is a 25-year-old male, national and citizen

of the Republic of Georgia whom, after being summoned to appear at the ICE district

office at 26 Federal Plaza, New York City, N.Y., Saturday morning, June 7, 2025, he was

taken into custody by ICE.   Petitioner T.K., has been informed by the Respondents'

1

agents that he would remain in ICE detention until he is deported (removed) from the United States. According to current trends involving ICE detention policies nationwide, ICE plans to transfer detainees out of the initial facilities where they might have been temporarily housed when they are taken into custody and are transferred away to remote locations—the most popular one for ICE being La Salle Detention Center in Jena, Louisiana. The main reason is not only for creating a far-deeper wedge between the housing locations of the detained noncitizens and the offices of their legal representatives, but also as ICE's preferred forum shopping selection, one that is well-recognized nationwide as the most anti-immigrant forum.

Petitioner has a final order of removal, 8 U.S.C. 1101(47)(A)-(B), entered against him by an immigration judge in 2019. Petitioner attempted to reopen those proceedings but was unsuccessful in obtaining administrative reopening and/or reconsideration of the 2019 decision. His motion to reopen and reconsider alleged a prima facie ineffective (and even fraudulent) legal representation that he received from his former attorneys. One of these failed attempt includes a non-compliant and *therefore* a failed attempt at making a proper claim of ineffective assistance that failed to follow the three (3) essential requirements established by the Board of Immigration Appeals ("BIA") in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988).[1]

---

[1] The BIA held in *Matter of Lozada* that ineffective assistance of counsel may violate due process. It established a framework for IJ's adjudicating claims of ineffective assistance, one addressing procedural and another substantive requirements for such

*(footnote continued on next page)*

In August 2024, Petitioner T.K. filed a petition for a special immigrant visa under the Violence Against Women Act ("VAWA") and Department of Justice Reauthorization Act of 2005, Pub. L. No 109- 162 (2005), 119 Stat.2960; as amended most recently under the Violence Against Women Reauthorization Act of 2013 (VAWA 2013) on March 7, 2013. Pub. L. No. 113-4, 127 Stat. 54. In response to this petition, the U.S. Department of Homeland Security ("USDHS") through its subagency the U.S. Citizenship and Immigration Services ("USCIS") issued T.K., a series of document-forms confirming the proper filing of the petition, and one of them evidencing a finding by the USCIS that Petitioner T.K.'s VAWA petition for special immigrant visa was found to have demonstrated statutory prima facie eligibility for the VAWA application. Group Exhibits A.

Among the myriad of benefits that VAWA applicants receive when filing such an application accompanying a motion to reopen removal proceedings is receiving a

---

*(footnote continued from previous page)*

claims, brought normally through a motion to reopen. The procedural requirements are as follows: (1) the motion must be supported by an affidavit attesting to the relevant facts. The affidavit should include a statement of the agreement between the respondent and the attorney with respect to the representation; (2) before the respondent files the motion, he or she must inform that counsel of the allegations and give that counsel an opportunity to respond. Any response should be included with the motion; and (3), the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not. In this instance, the former attorneys failed to follow (and thereby establish) the first and third *Lozada* requirements and compelling a procedural denial of the motion to reopen.

statutory automatic stay of removal (deportation). *See* Immigration and Nationality Act ("INA") § 240(c)(7)(C)(iv), 8 U.S.C. 1229a(c)(7)(C)(iv). Under those provisions, filing a motion to reopen with an accompanying application for VAWA adjustment or VAWA cancellation (both, enabling a potential grant of lawful permanent residence status) stays the petitioner's removal from the United States for "qualified aliens" pending final disposition of the motion to reopen, including all statutory available appeals. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv) stating: "The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien . . . pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien"; and compare with 8 U.S.C. § 1641(c)(1)(B) which defines one who is "qualified alien" as someone who, among others, has a pending VAWA special immigrant visa self-petition (Form I-360) that sets forth a *prima facie* case for eligibility. 8 U.S.C. § 1641(c)(1)(B)(i) through (v).

In this instance, T. K., has properly filed a VAWA petition, the USCIS has properly issued an acknowledgment that T.K., has established the required prima facie eligibility for the benefit he seeks thereby meeting the required standard for such applicants; and the VAWA petition itself remains pending USCIS final adjudication, all of which means that the statutory stay described at 8 U.S.C. § 1641(c)(1)(B)(i) squarely applies to him and protects him from being removed from the United States, even if the petition remains pending.

Indeed, INA § 240(c)(7)(C)(iv), 8 U.S.C. § 1229a(c)(7)(C)(iv) automatic stay applies in the instant case to Petitioner T.K., because he has established prima facie

eligibility as a "qualified alien" under 8 USC § 1641(c)(1)(B)(i). Further, once the VAWA special immigrant visa petition is fully adjudicated by the USCIS, the resulting grant will allow T.K. to apply for adjustment of status under INA § 245, 8 U.S.C. § 1255 and obtain lawful permanent residence status. Despite these statutory protections preventing his removal from the United States, ICE has unlawfully rearrested Petitioner with the expressed intention to remove him from the United States. The arrest and the purpose behind are unlawful. There are no new facts or new statutory grounds within the administrative agency record warranting the rearrest of T.K. after being released from ICE custody in 2021, when he first showed then that he was neither (i) a "danger" to the national security of the United States; (ii) a "danger" to the community; or (iii) a "flight risk." INA § 236(a); 8 U.S.C. § 1226(a); 8 C.F.R. Part 1236.1 *et seq.*; *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Because no single fact (including no change in law) has changed in the agency record to warrant T.K.'s rearrest after the AG concluded that he neither pose a danger to the community or a flight risk in 2021 when he was first released from ICE custody, the ICE agents' rearrest of T.K. is an apparent effort by the local ICE agents to satiate the thirst of their ruler, , Respondent NOEM, for manifesting disobedience of the rule of law. This is particularly unlawful in instances such as here where T.K.'s motion to reopen under VAWA remains pending before the US Department of Justice ("USDOJ") accompanied by a statutory automatic stay of removal.

Petitioner challenges his detention as a violation of the various INA provisions referenced above as well as a continuing violation of the Due Process Clause of the Fifth Amendment. Petitioner T.K., requests therefore that this Court grants him a Writ of

Habeas Corpus and order Respondents to release him from ICE custody or issue an order to show cause. Petitioner seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging civil immigration detention. *See Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas") (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## CUSTODY

Petitioner is in the physical custody of respondents. Petitioner T.K. is being held at 26 Federal Plaza, New York City, N.Y., in the local enforcement and removal operations ("ERO") immigration detention facility in that city. Petitioner is under the direct control of the Respondents named herein by and through their delegated agents.

## JURISDICTION

This Court has jurisdiction to entertain this habeas petition under 28 U.S.C. 1331; 28 U.S.C. 2241; the Due Process Clause of the Fifth Amendment, U.S. Const. amend. V; and the Suspension Clause, U.S. Const. art. I, § 2. Additional authority to consider remedies in this petition is found under the Administrative Procedures Act ("APA"), § 701 et sequm.

## VENUE

Venue over this petition is proper in the Southern District of New York under 28 U.S.C. 1391 and 28 U.S.C. 2242 because at least one Respondent is in this District, if not all, and Petitioner T.K., is detained in this District, Petitioners' immediate physical custodian is located in this District, and a substantial part of the events giving rise to the claims in this action took place in this District. *See generally Rumsfeld v. Padilla*, 542

U.S. 426, 434 (2004) ("the proper respondent to a habeas petition is 'the person who has custody over the petitioner'") (citing 28 U.S.C. 2242) (cleaned up).

## PARTIES

Petitioner T.K., is detained by Respondents at the aforementioned 26 Federal Plaza, ERO, an immigration interim detention facility. He has been in ICE custody most recently since Saturday, June 7, 2025, when he was arrested at that facility after complying with an order from the Respondents summoning him to appear before them on June 6, 2025.

Respondents FLANAGAN, ALMODOVAR, and NOEM share the same responsibilities that any Warden of this facility would where Petitioner is currently detained. They are the legal custodians of Petitioner and are named herein in their official capacity as Respondents in this action.

Respondent FLANAGAN is the Field Office Director responsible for the 26 Federal Plaza Field Office of ICE with administrative jurisdiction over Petitioner's immigration detention facility. He is a legal custodian of Petitioner and is named in his official capacity.

Respondent ALMODOVAR is the Acting Director of ICE's ERO in New York. She is a legal custodian of Petitioner and is named in her official capacity.

Respondent NOEM is the Secretary of the DHS. She is a legal custodian of Petitioner T.K. and is named in her official capacity. Respondent Pamela Jo Bondi is the AG and the head of the USDOJ. She is a legal custodian of Petitioner and is named in her official capacity.

7

I.    **PETITIONER WAS UNLAWFULLY DETAINED DESPITE THE FACT THAT THERE HAS BEEN NO FACTUAL OR STATUTORY CHANGES WARRANTING HIS REARREST SINCE HIS INITIAL RELEASE FROM ICE CUSTODY IN 2021.**

Petitioner T.K. arrived in the United States on January 23, 2019 with his parents (Nino Veliashvili (mother) Alexander Kuprashvili (father)) and a younger sibling (Anri Kuprashvili)). At that time they approached the Laredo, Texas Port of Entry ("Laredo POE") and requested permission to enter the United States to apply for asylum and protection from refoulment relief. *See* Forms I-213, and I-862, marked <u>Group Exhibits B</u>. As a consequence of the manner in which they openly presented themselves to the immigration inspectors the Respondents classified them as "arriving aliens", a term defined by statute at INA § 101(a)(13)(A), 8 C.F.R. Parts 1.2 and 1001.1(q)

Petitioner T.K. and all of his family members were then taken into the custody of the United States, at the La Salle Service Processing Center in Jena, Louisiana and were placed in expedited removal proceedings under INA § 235, 8 U.S.C. § 1225, pending further review of their cases. Because T.K. and all of his family members expressed fear of returning to their home in Georgia, they were referred to an asylum officer for a credible fear interviews and for individual determinations. Eventually, Respondents placed T.K. (and his family members) in regular removal proceedings before an immigration judge ("IJ") after they succeeding in demonstrating a credible fear of returning to their home country in Georgia, under INA § 240, 8 U.S.C. § 1229a, where at a merits hearing on October 11, 2019, the IJ found him ineligible for any relief under the INA and ordered him removed from the United States.

Petitioner T.K. did not timely appeal the IJ's decision challenging the findings predicating the IJ's decision to deny the applications for relief.  Instead, through new counsel T.K. filed a timely motion to reopen based on former counsel's ineffective representation, a factor that was later criticized by Respondents and by the Board of Immigration Appeals ("BIA") on a separate appeal because those findings were not directly challenged.

## II.     THE AUTOMATIC STAY OF REMOVAL PENDING FINAL ADJUDICATION OF HIS MOTION TO REOPEN BASED ON VAWA SPECIAL IMMIGRANT REMAINS IN EFFECT AND PRECLUDES THE RESPONDENTS FROM REMOVING HIM FROM THE UNITED STATES.

The statutes at 8 U.S.C.§ 1229a(c)(7)(C)(iv) and its companion at 8 U.S.C. § 1641(c)(1)(B)(i) unambiguously provide that ""The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien . . . Pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien." And 8 U.S.C. § 1641(c)(1)(B)(i) which defines in pertinent part who is a "qualified alien" as someone who, among others, has a pending VAWA special immigrant visa self-petition (Form I-360) that sets forth a prima facie case for eligibility. 8 U.S.C. § 1641(c)(1)(B)(i) through (v).

The Court can determine from the statutory protections referenced above that the stay of removal remains valid even if the VAWA beneficiary Petitioner has a final removal order. 8 U.S.C. 1229a(c)(7)(C) (there is an automatic stay and the government "shall not remove the alien from the United States during the period in which such VAWA status is in effect."). Indeed, individuals with a final order of removal are statutorily eligible for VAWA and may not be denied VAWA if otherwise eligible on the basis of that outstanding removal order.

For that reason alone, this Court should grant the writ and order Petitioner's immediate release. See 28 U.S.C. 2241(c)(3) (authorizing writ for people detained in violation of federal law). Should the Court nonetheless choose to address constitutional questions, it should also find that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner T.K.'s detention violates the Fifth Amendment's protection for liberty, for at least three related reasons. First, immigration detention must always "bear[] a reasonable relation to the purpose for which the individual was committed." Demore v. Kim, 538 U.S. 510, 527 (2003) (citing Zadvydas, 533 U.S. at 690). Where, as here, the government has no authority to deport Petitioner, detention is not reasonably related to its purpose.

Second, because Petitioner is not "deportable" insofar as the VAWA provisions bar his deportation pending final adjudication of the underlying VAWA motion to reopen, the Due Process Clause requires that any deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. See Reno v. Flores, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"); Demore, 538 U.S. at 528 (applying less rigorous standard for "deportable aliens"). Petitioner's on-going imprisonment obviously cannot satisfy that rigorous standard.

Third, at a bare minimum, "the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention." Zadvydas v. Davis, 533 U.S. 678, 718 (2001)

(Kennedy, J., dissenting) (emphasis added). Where federal law explicitly prohibits an individual's detention, their detention also violates the Due Process Clause. Here, federal law explicitly prohibits the removal of Petitioner T.K. while his motion to reopen under VAWA is being considered, and even if denied, while a properly statutory right to appeal remains pending.

### III. THE RESPONDENT USICE IS REQUIRED BY ITS OWN GUIDELINES TO HOLD PETITIONER IN ITS CUSTODY IN NEW YORK AND ANY VIOLATION OF THIS GUIDELINES CONSTITUTES A DEPRIVATION OF PETITIONER'S DUE PROCESS RIGHTS.

The Respondents have instituted administrative processing guidelines designed to prioritize transfer determinations that "are meant to minimize, to the extent possible, detainee transfers outside the area of responsibility and to provide cost savings to the agency," and directing all employees of ICE and the DHS to follow when transferring detainees. *See* Exhibit C.

Notwithstanding, the clear violation of these guidelines and the Due Process Clause of the Fifth Amendment, the Respondents have initiated and will effect the unlawful transfer of Petitioner T.K. away from the New York district to a far distant forum of convenience for the Respondents.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT – 8 U.S.C. §§ 1229a and 1641**

Petitioner realleges and incorporates by reference each and every allegation contained above.

Title 8 U.S.C. § 1229a(c)(7)(C)(iv) and its companion at 8 U.S.C. § 1641(c)(1)(B)(i) unambiguously provide that "The filing of a motion to reopen under this clause shall . . . stay the removal of a qualified alien . . . pending the final disposition of the motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien." And 8 U.S.C. § 1641(c)(1)(B)(i), which defines in pertinent part who is a "qualified alien" as someone who, among others, has a pending VAWA special immigrant visa self-petition (Form I-360) that sets forth a *prima facie* case for eligibility. 8 U.S.C. § 1641(c)(1)(B)(i) through (v).

These provisions govern the treatment of a VAWA special immigrant visa applicant, including their detention and removal under federal immigration law. Thus, Petitioners' detention violates 8 U.S.C. §§ 1641(c)(1)(B)(i) and 1229a(c)(7)(C)(iv) and he is entitled to immediate release from custody absent a credible finding that either a change in facts or law has taken place since his release from custody in 2021.

## COUNT TWO

### VIOLATION OF THE DUE PROCESS CLAUSE
### OF THE FIFTH AMENDMENT TO THE U.S.
### CONSTITUTION

Petitioner realleges and incorporate by reference each and every allegation contained above.

The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003). Petitioner T.K.'s detention violates the Due Process

Clause because it is not rationally related to any immigration purpose; because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner; and because it lacks any statutory authorization.

A surreptitious transfer of Petitioner to another jurisdiction is a Due Process violation of his constitutional rights under the Fifth Amendment and Respondents should be ordered to keep him in the proper jurisdiction of New York.

### PRAYER FOR RELIEF

WHEREFORE, Petitioners pray that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Order Respondents to show cause why the writ should not be granted within three (3) days, and set a hearing on this Petition within five (5) days of the return, as required by 28 U.S.C. 2243;

3. Declare that Petitioner's detention violates the Immigration and Nationality Act, and specifically 8 U.S.C. 1229a(c)(7)(C)(iv);

4. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

5. Grant a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody;

6. Enjoin Petitioners from further detaining Petitioner so long as his VAWA motion to reopen remains pending and including the pendency of any statutory appellate available remedies and from transferring him to another jurisdiction

that violates their own U.S. Immigration and Customs Enforcement, Detainee Transfers Policy 11022.1;

7. Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

8. Grant such further relief as this Court deems just and proper.


Dated: June 8, 2025                                   Respectfully submitted,


                                                      COUNSEL FOR PETITIONER

                                                      /s/ Bernal Peter Ojeda
                                                      Bernal Peter Ojeda
                                                      Attorney for Petitioner
                                                      Temuri Kuprashvili

## Certificate of Verification

I, the undersigned, am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I, and others working under my supervision have discussed with Petitioner the events described in this Petition. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus, including the statements regarding Petitioner's VAWA applicant status, are true and correct to the best of my knowledge.

/s/ Bernal Peter Ojeda                                  Date: June 8, 2025
Bernal Peter Ojeda
Counsel for the Petitioner

# GROUP EXHIBITS

# A

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number LIN2427050465 | | Case Type I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
|---|---|---|
| Received Date 08/12/2024 | Priority Date | Petitioner A201 661 149 KUPRASHVILI , TEMURI |
| Notice Date 08/13/2024 | Page 1 of 2 | Beneficiary A201 661 149 KUPRASHVILI , TEMURI |

LAW OFFICE OF NONA TILLEY ESQ
c/o NONA TILLEY
7201 13 AVE
BROOKLYN NY 11228

**Notice Type:** Receipt Notice
Filing Fee Waived
**Section:** Self-Petitioning Spouse of Abusive
U.S.C.

We have received the application or petition ("your case") listed above. It does NOT grant you any immigration status or immigration benefit. This notice only shows that your case was filed on the "Received Date" listed above. It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

<u>Contacting the Agency (Filings for Battered Spouses, Children, or Parents)</u>
If your safe mailing address changes and you do not have an attorney of record or representative on your case, you must submit your address change in writing, with your signature, to the Vermont Service Center. Otherwise, you may not receive notice of action(s) taken on your case. If any other changes need to be made you also must contact the Vermont Service Center in writing. Please include what changes need to be made and your signature.

If any of the information in your notice is incorrect or you have questions about your case, you can reach USCIS at www.uscis.gov/contact, utilizing the available case inquiry options for "Inquiries for VAWA, T, and U Filings."

Nebraska Service Center
U.S. Citizenship & Immigration Services
P.O. Box 82521
Lincoln, NE 68501-2521

<u>Contacting the Agency (All Other Filings)</u>
If any of the above information is incorrect or if you have any questions about the status of your case, please call the USCIS National Customer Service Center (NCSC) at 1-800-375-5283 or visit the USCIS website at www.uscis.gov (if you are hearing impaired, the NCSC TDD number is 1-800-767-1833). If you call us, please have your Alien Registration Number (A-Number) and/or the receipt number shown above. The receipt number is a tracking number for your case and will help with inquiries.

**Processing time** - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

- View your case status on our website's Case Status Online page.
- You can also sign up to receive free email updates as we process your case.
- During most of the time while your case is pending, the processing status will not change. This is because we are working on cases that were filed before your case.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.
- If you do not receive an initial decision or update from us within our current processing time, contact the NCSC at 1-800-375-5283 or visit our website at www.uscis.gov for options for submitting an inquiry.

**Biometrics** - We require biometrics (fingerprints, a photo, and a signature) for some types of cases. If we need biometrics from you, we will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must wait for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are:

- A passport or national photo ID issued by your country,
- A driver's license,
- A military photo ID, or
- A state-issued photo ID card.

If you receive more than one ASC appointment notice (even for different cases), take them both to the first appointment date.

**Return of Original Documents** - Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For example: If you wish to obtain your mother's birth certificate and your parents' marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  10/13/21

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | | |
| --- | --- | --- |
| LIN2427050502 | | |
| Received Date | | Case Type |
| 08/12/2024 | Priority Date | 1485 - APPLICATION TO REGISTER PERMANENT RESIDENCE OR ADJUST STATUS |
| Notice Date | | Applicant  A201 661 149 |
| 08/13/2024 | Page | KUPRASHVILI , TEMURJ |
| | 2 of 2 | Beneficiary A201 661 149 |
| | | KUPRASHVILI , TEMURJ |

will be denied. Please see 8 CFR section 245.23(j), for T adjustment of status applications, and section 245.24(j), for U adjustment of status applications. In addition, you may be unable to re-enter the United States, or you may be placed in removal proceedings before an Immigration Judge. You may apply for advance parole by submitting an Application for Travel Document (Form I-131) to this office. If you have already filed a Form I-131, the decision on your application will be sent under separate cover.

**If any of the information in your notice is incorrect** or you have any questions about your case, you can connect with the USCIS Contact Center at www.uscis.gov/contact or ask about your case online at www.uscis.gov/e-request. You will need your Alien Registration Number (A-Number) and/or the receipt number shown above.

If you have T or U nonimmigrant status, you can connect with USCIS using the available case inquiry options on the Victims of Trafficking and Other Crimes website here: https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes

You can also receive updates on your case by visiting www.uscis.gov/casestatus to get the latest status or you can create an account at my.uscis.gov/account and receive email updates for your case.

**Processing time** - Processing times vary by form type.
- Visit www.uscis.gov/processingtimes to see the current processing times by form type.
- If you do not receive an initial decision or update within our current processing time, you can try our online tools available at www.uscis.gov/tools or ask about your case online at www.uscis.gov/e-request.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.

**Biometrics** - We require biometrics (fingerprints, a photo, and a signature) for some types of cases. If we need biometrics from you, we will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must wait for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are:

- A passport or national photo ID issued by your country,
- A driver's license,
- A military photo ID, or
- A state-issued photo ID card.

If you receive more than one ASC appointment notice (even for different cases), take them both to the first appointment date.

**If your address changes** - If you move while your case is pending, please visit www.uscis.gov/addresschange for information on how to update your address. Remember to update your address for all your receipt numbers.

**Return of Original Documents** - Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For example: if you wish to obtain your mother's birth certificate and your parents' marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

**NOTICE:** Under the INA, the information you provide on and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will provide you and the legal representative listed on your Form G-28 an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521



**USCIS Contact Center:** www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  10/13/21

www.uscis.gov



Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number LIN2427050502 | Case Type I485 - APPLICATION TO REGISTER PERMANENT RESIDENCE OR ADJUST STATUS |
|---|---|
| Received Date 08/12/2024 | Priority Date | Applicant A201 661 149 KUPRASHVILI , TEMURI |
| Notice Date 08/13/2024 | Page 1 of 2 | Beneficiary A201 661 149 KUPRASHVILI , TEMURI |

| | |
|---|---|
| TEMURI KUPRASHVILI c/o NONA TILLEY ESQ 7201 13TH AVE BROOKLYN NY 11228 | Notice Type: Receipt Notice Fee Waived Section: VAWA self-petitioner |

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

**We have received the application or petition ("your case") listed above. This notice shows that your case was filed on the "Received Date" listed above. It does NOT grant the beneficiary any immigration status, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision or if we need additional information.**

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available if you contact us about your case.

**T/U Filings** - If you were still in valid T or U nonimmigrant status on the date your Application to Register Permanent Residence or Adjust Status (Form I-485) was received, that status is extended until a decision is reached on your Form I-485. If your status was no longer valid by the date your Form I-485 was received, you will need to file an Application to Extend/Change Nonimmigrant Status (Form I-539) with this office to request an extension of your nonimmigrant status.

**EMPLOYMENT AUTHORIZATION:**
T-1, U-1, U-2, U-3, U-4, and U-5 nonimmigrants who timely filed Form I-485 are authorized to work in the United States incident to their status while their Application to Register Permanent Residence or Adjust Status (Form I-485) is pending. Your Form I-485 was timely filed if the "Received Date" on this form is on or before your Form I-94 expiration date.

The following documents are acceptable as evidence of your employment authorization for I-9, Employment Eligibility Verification:

- If you are a T-1 nonimmigrant, the combination of this receipt notice and your Form I-94 shows employment authorization for **two years** from the expiration date of your Form I-94.
- If you are a U-1, U-2, U-3, U-4, or U-5 nonimmigrant, the combination of this receipt notice and your Form I-94 shows employment authorization for **one year** from the expiration date of your Form I-94.
- NOTE: While the document combinations above are acceptable for Form I-9 purposes as evidence of your employment authorization, if you are a T-1, U-1, U-2, U-3, U-4 or U-5, nonimmigrant with a pending Form I-485, you may also apply for an Employment Authorization Document (EAD), pursuant to 8 CFR 274a.12(c)(9) by submitting an Application for Employment Authorization (Form I-765) to this office. The EAD is acceptable evidence of your employment authorization and identity for Form I-9.
- If you are a T-2, T-3, T-4, T-5, or T-6 nonimmigrant, you must have a valid, unexpired EAD to be eligible to work, including while your derivative T nonimmigrant status is extended and while your Form I-485 is pending. To obtain an EAD, you must submit an Application for Employment Authorization (Form I-765) to this office. This receipt notice and your Form I-94 are not acceptable evidence for I-9 purposes to show employment authorization.

If your Form I-485 is denied or withdrawn, your automatic extension of T or U nonimmigrant status immediately terminates. Additionally, if you are a T-1, U-1, U-2, U-3, U-4, or U-5 nonimmigrant, your employment authorization immediately terminates, and you will no longer be authorized for employment based on your extended T or U nonimmigrant status, and you may not provide this receipt notice with your Form I-94 for Form I-9 purposes.

If you have already filed a Form I-765, the decision on your application will be sent under separate cover.

**DEPARTING FROM THE UNITED STATES:**
If you plan to depart the United States, you must obtain permission to return to the United States by requesting advance parole before you leave. If you do not obtain advance parole before your departure, you will be considered to have abandoned your application for adjustment of status and the application **Please see the additional information on the back. You will be notified separately about any other cases you filed.**

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https:// www.uscis.gov/file-online.

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.        Form I-797C  10/13/21

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| ASC Appointment Notice | APPLICATION/PETITION/REQUEST NUMBER ZDF2362685800 | | | NOTICE DATE 07/28/2023 |
|---|---|---|---|---|
| CASE TYPE I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL | | ACCOUNT NUMBER | USCIS A# A201 661 149 | CODE 3 |

TEMURI KUPRASHVILI
1860 E 12 ST
4C
BROOKLYN NY 11229



**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.** To process your application, petition, or request, the U.S. Citizenship & Immigration Services (USCIS) must collect your biometrics. Please appear at the below Application Support Center (ASC) at the date and time specified.

**WARNING:** Unless USCIS excuses you based on good cause, failure to appear at this biometrics appointment will result in an applicant-caused delay that will impact your eligibility for employment authorization based on your pending asylum application. If you fail to appear at this appointment as scheduled, USCIS may: (1) dismiss your asylum application, if you are in lawful immigration status or paroled; or (2) refer your application to an immigration judge, if you are not in lawful immigration status or paroled. If you fail to appear at this appointment as scheduled, and you are currently in removal proceedings, an immigration judge may deem your application abandoned.

| APPLICATION SUPPORT CENTER | DATE AND TIME OF APPOINTMENT |
|---|---|
| USCIS BROOKLYN 1260-1278 60th Street Brooklyn NY 11219 | 08/18/2023 11:00AM |

**WHEN YOU APPEAR AT THE ASC FOR BIOMETRICS SUBMISSION, YOU MUST BRING:**

1. **THIS APPOINTMENT NOTICE**, and
2. **PHOTO IDENTIFICATION** (e.g. passport, valid driver's license, national ID, military ID, State-issued photo ID, or USCIS-issued photo ID). If you do not have photo identification, please expect a delay.

Only those necessary to assist with transportation or completion of the biometrics worksheet should accompany you to your ASC appointment. If you have open wounds, bandages, or casts when you appear for biometrics submission, USCIS may reschedule your ASC appointment if we determine your injuries may interfere with your biometrics submission. Please do not visit a USCIS office if you are sick or feel symptoms of being sick. Follow the instructions on this notice to reschedule your appointment.

You may bring cell phones or electronic devices, but they must be turned off during biometrics collection. No one may photograph or record at an ASC.

For more information regarding your ASC appointment, visit https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment. If you have questions regarding this notice, please call the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833).

**NOTE:** If an ASC closes due to inclement weather or unforeseen circumstances, USCIS will automatically reschedule your ASC appointment for the next available date and time. For the latest information on the status of an office, visit https://www.uscis.gov/about-us/uscis-office-closings. Please check this page on the day of your ASC appointment. If USCIS reschedules your ASC appointment, you will receive a new ASC appointment notice.

You must update your address within 10 days if you move. For instructions, visit https://www.uscis.gov/addresschange. If you are in removal proceedings, you must also notify the Executive Office for Immigration Review (EOIR or Immigration Court) within five working days of any change of address or telephone number by filing a completed Form EOIR-33, Alien's Change of Address/Phone Number Form/Immigration Court. For instructions, visit https://www.justice.gov/eoir/form-eoir-33-eoir-immigration-court-listing.

**WARNING:** Failure to update your mailing address with USCIS, and, if applicable, EOIR, may result in dismissal of your asylum application, referral of your asylum application to an immigration judge, or if you are already in removal proceedings, an entry of a removal order in your absence if you fail to appear at a hearing before an immigration judge.

USCIS may use your biometrics to check the criminal history records of the FBI, for identity verification, to determine eligibility, to create immigration documents (e.g., Green Card, Employment Authorization Document, etc.), or any purpose authorized by the Immigration and Nationality Act. You may obtain a copy of your own FBI record using the procedures outlined within Title 28 C.F.R., Section 16.32. For information, please visit: https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/identity-history-summary-checks. For Privacy Act information, please visit https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/compact-council/privacy-act-statement

| REQUESTS TO RESCHEDULE YOUR APPOINTMENT | BIOMETRIC HANDLING |
|---|---|
| If you are unable to attend your scheduled ASC appointment, you may request that USCIS reschedule your appointment. You must 1) make a request before the date and time of the original appointment and 2) establish good cause for rescheduling. To obtain a request before your scheduled appointment or fail to establish good cause, USCIS may not reschedule your ASC appointment. To request a reschedule, please call the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833). If you have a serious ongoing medical condition and you cannot leave your home/hospital, you may request a mobile biometrics/homebound appointment by following the instructions on the back in the Notice for People with Disabilities or by visiting uscis.gov/accommodations. | INITIAL PROCESSING ON _____ <br> BIOMETRICS QA REVIEW BY: _____ ON _____ <br> TENPRINTS QA REVIEW BY:  ON 8/18/23 |

APPLICATION NUMBER  I589- ZDF2362685800

For questions about this notice call 1-800-375-5283. For questions about your application, contact the Asylum Office or Immigration Court with jurisdiction over your case.

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.

Form I-797C  10/13/21

www.uscis.gov



Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| **ASC Appointment Notice** | APPLICATION/PETITION/REQUEST NUMBER ZDF2362685800 | | | | NOTICE DATE 07/28/2023 |
|---|---|---|---|---|---|
| CASE TYPE | | | | | |
| I589 - APPLICATION FOR ASYLUM AND FOR WITHHOLDING OF REMOVAL | | ACCOUNT NUMBER | USCIS A# A201 661 149 | | CODE 3 |

TEMURI KUPRASHVILI
1860 E 12 ST
4C
BROOKLYN NY 11229





**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.** To process your application, petition, or request, the U.S. Citizenship & Immigration Services (USCIS) must collect your biometrics. Please appear at the below Application Support Center (ASC) at the date and time specified.

**WARNING:** Unless USCIS excuses you based on good cause, failure to appear at this biometrics appointment will result in an applicant-caused delay that will impact your eligibility for employment authorization based on your pending asylum application. If you fail to appear at this appointment as scheduled, USCIS may: (1) dismiss your asylum application, if you are in lawful immigration status or paroled; or (2) refer your application to an immigration judge, if you are not in lawful immigration status or paroled. If you fail to appear at this appointment as scheduled, and you are currently in removal proceedings, an immigration judge may deem your asylum application abandoned.

| **APPLICATION SUPPORT CENTER** | **DATE AND TIME OF APPOINTMENT** |
|---|---|
| USCIS BROOKLYN | 08/18/2023 |
| 1260-1278 60th Street | 11:00AM |
| Brooklyn NY 11219 | |

**WHEN YOU APPEAR AT THE ASC FOR BIOMETRICS SUBMISSION, YOU MUST BRING:**
1. **THIS APPOINTMENT NOTICE,** and
2. **PHOTO IDENTIFICATION** (e.g. passport, valid driver's license, national ID, military ID, State-issued photo ID, or USCIS-issued photo ID). If you do not have photo identification, please expect a delay.

Only those necessary to assist with transportation or completion of the biometrics worksheet should accompany you to your ASC appointment. If you have open wounds, bandages, or casts when you appear for biometrics submission, USCIS may reschedule your ASC appointment if we determine your injuries may interfere with your biometrics submission. Please do not visit a USCIS office if you are sick or feel symptoms of being sick. Follow the instructions on this notice to reschedule your appointment.

You may bring cell phones or electronic devices, but they must be turned off during biometrics collection. No one may photograph or record at an ASC.

For more information regarding your ASC appointment, visit https://www.uscis.gov/forms/filing-guidance/preparing-for-your-biometric-services-appointment. If you have questions regarding this notice, please call the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833).

**NOTE:** If an ASC closes due to inclement weather or unforeseen circumstances, USCIS will automatically reschedule your ASC appointment for the next available date and time. For the latest information on the status of an office, visit https://www.uscis.gov/about-us/uscis-office-closings. Please check this page on the day of your ASC appointment. If USCIS reschedules your ASC appointment, you will receive a new ASC appointment notice.

You must update your address within 10 days if you move. For instructions, visit https://www.uscis.gov/addresschange. If you are in removal proceedings, you must also notify the Executive Office for Immigration Review (EOIR or Immigration Court) within five working days of any change of address or telephone number by filing a completed Form EOIR-33, Alien's Change of Address/Phone Number Form/Immigration Court. For instructions, visit https://www.justice.gov/eoir/form-eoir-33-eoir-immigration-court-listing.

**WARNING:** Failure to update your mailing address with USCIS, and, if applicable, EOIR may result in dismissal of your asylum application, referral of your asylum application to an immigration judge, or if you are already in removal proceedings, an entry of a removal order in your absence if you fail to appear at a hearing before an immigration judge.

USCIS may use your biometrics to check the criminal history records of the FBI, for identity verification, to determine eligibility, to create immigration documents (e.g., Green Card, Employment Authorization Document, etc.), or any purpose authorized by the Immigration and Nationality Act. You may obtain a copy of your own FBI record using the procedures outlined within Title 28 C.F.R., Section 16.32. For information, please visit: https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/identity-history-summary-checks. For Privacy Act information, please visit https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/compact-council/privacy-act-statement

**REQUESTS TO RESCHEDULE BIOMETRICS HANDLING**

If you are unable to attend your scheduled ASC appointment, you may request that USCIS reschedule your appointment. Your request to reschedule must: 1) be made before the date and time of the original appointment and 2) establish good cause for rescheduling. If you fail to make a request before your scheduled appointment or fail to establish good cause, USCIS may not reschedule your ASC appointment. To request a reschedule, please visit https://my.uscis.gov/account/v1/needtoreschedule/overview. You may also call the USCIS Contact Center at 1-800-375-5283 (TTY 800-767-1833).

If you have a serious ongoing medical condition and you cannot leave your home/hospital, you may request a mobile biometrics/homebound appointment by following the instructions on the back in the Notice for People with Disabilities or by visiting uscis.gov/accommodations.

BIOMETRICS QA REVIEW BY: _____ ON _____

TENPRINTS QA REVIEW BY:  ON 8/18/23

APPLICATION NUMBER I589- ZDF2362685800

For questions about this notice call 1-800-375-5283. For questions about your application, contact the Asylum Office or Immigration Court with jurisdiction over your case.

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | | Case Type |
|---|---|---|
| LIN2427050465 | | I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
| **Received Date** 08/12/2024 | **Priority Date** | **Petitioner** A201 661 149 KUPRASHVILI, TEMURI |
| **Notice Date** 08/13/2024 | **Page** 2 of 2 | **Beneficiary** A201 661 149 KUPRASHVILI, TEMURI |

NOTICE: The information you provide on and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Applicants:

| Name | DOB | COB | Class |
|---|---|---|---|
| KUPRASHVILI , TEMURI | 03/30/1998 | GEORGIA | |

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.    Form I-797C   10/13/21

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number | | Case Type |
|---|---|---|
| LIN2427050465 | | I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |
| Received Date 08/12/2024 | Priority Date | Petitioner A201 661 149 KUPRASHVILI, TEMURI |
| Notice Date 08/13/2024 | Page 2 of 2 | Beneficiary A201 661 149 KUPRASHVILI, TEMURI |

NOTICE: The information you provide on and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Applicants:
Name
KUPRASHVILI , TEMURI

| | DOB | COB | | Class |
|---|---|---|---|---|
| | 03/30/1998 | GEORGIA | | |

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.                Form I-797C  10/13/21

# GROUP EXHIBITS

# B

| U.S. Department of Homeland Security | SIGMA Event: 25052921 Subject ID : 353585966 | Record of Deportable/Inadmissible Alien |
|---|---|---|

| Family Name (CAPS) KUPRASHVILI, Temuri | First | Middle | | Sex M | Hair BRO | Eyes BRO | Cmplxn LBR |
|---|---|---|---|---|---|---|---|

| Country of Citizenship GEORGIA | Passport Number and Country of Issue 18AA20367 GEORG | Case No. File Number LARL191.000426 A201661149 | Height | Weight 1 | Occupation |

**Height:** 12

| U.S. Address 1001 SAN RIO BLVD  LAREDO, TEXAS, | | Scars and Marks See Narrative |

| Date, Place, Time, and Manner of Last Entry 01/23/2019, LAR, 1306, ASYLEE | Passenger Boarded at LAREDO | ☐ Single ☐ Married ☐ Divorced ☐ Married ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence SHARTAVA 16 FLAT 2  TBILISI, GEORGIA | | Method of Location/Apprehension ISP |

| Date of Birth 03/30/1998          Age: 20 | Date of Action 01/25/2019 | Location Code SNA/LAR | At/Near SNA/LAR | Date/Hour 01/24/2019 1104 |

| City, Province (State) and Country of Birth KUTAISI, N/A, GEORGIA | AR [X] | Form # (Type and No.) Listed ☐ Not Listed ☐ | By FRANCISCO CASTILLO II |

| NIV Issuing Post and NIV Number None | Social Security Account Name None | Status When Found Asylum | Status When Found Seeking Immigration |

| Date Visa Issued None | Social Security Number None | Length of Time Illegally in U.S AT ENTRY |

| Immigration Record NEGATIVE - See Narrative | Criminal Record None Known | |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | | Number and Nationality of Minor Children 0 |

| Father's Name, Nationality, and Address, if Known KUPRASHVILI, Alexander NATIONALITY: GEORGIA | Mother's Present and Maiden Names, Nationality, and Address, if Known VELIASHVILI, Nino NATIONALITY: GEORGIA |

| Monies Due/Property in U.S. Not in Immediate Possession None Claimed | Fingerprinted? [X] Yes ☐ No | Systems Checks See Narrative | Charge Code Word(s) I7A1 |

| Name and Address of (Last) (Current) U.S. Employer | Type of Employment | Salary Hr | Employed from/to |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS: ███████

Left index fingerprint

Right index fingerprint



SCARS, MARKS, AND TATTOOS
--------------------------
MOLE EYEBROW, LEFT/LEFT EYE AREA - MOLE OUTISDE LEFT EYE
SCAR HAND, LEFT - SCAR LEFT PINKY
SCAR LEG, RIGHT, NONSPECIFIC - SCAR RIGHT SHIN

...(CONTINUED ON I-831)

| Alien has been advised of communication privileges | 1-28-19 RZ (Date/Initials) | RICARDO ZAMORA CBP Officer (Signature and Title of Immigration Officer) |
|---|---|---|

| Distribution | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| | Officer: RICARDO ZAMORA |
| | on January 25, 2019 (time) |
| | Disposition Expedited Removal with Credible Fear |
| | Examining Officer MICHAEL R. GARZA |

Form I-213 (Rev. 08/01/07)

U.S. Department of Homeland Security                    Continuation Page for Form    I213

| Alien's Name | File Number A201661149 | Date |
| KUPRASHVILI, Temuri | SIGMA Event: 25052921 | |
| | Event No: LAR1901000426 | 01/24/2019 |

RECORDS CHECKED
----------------
CCD Neg
CIS Neg
IAFIS Neg
NCIC Neg
O Neg
TECS Neg

SECTION CODES
-------------
212a7AiI

ARREST/ENCOUNTER DATA:
Subject expressed Credible Fear of returning to their home country of Georgia. Subject was not in possession of valid documentation to enter the United States, and was processed for an Expedited Removal pursuant to Section 212(a)(7)(A)(i)(I) under the provision of section 235(b)(1) of the INA.  Subject was detained pending a Credible Fear Interview, and was turned over to the custody of ERO (Enforcement Removal Operations).

ENTRY/INADMISSIBILITY:
On January 23, 2019, at approximately 1306 hours, subject, Temuri KUPRASHVILI, with date of birth March 30, 1998, a Georgia Citizen, applied for admission into the United States from Mexico through the Gateway to the Americas, Port of Entry, in Laredo, Texas in a rental car. Subject requested asylum for himself and was then referred to Passport Control Secondary for further interviewing and processing.

PAT-DOWN:
A pat-down for merchandise, contraband, and documents was conducted on subject Temuri KUPRASHVILI, by CBPO S Olavarria and witnessed by CBPO V Toeh, which resulted in negative findings. The subject had $300.00 USD and $300.00 Mexican Pesos on his possession, which was documented on the Currency/Monetary Instrument Inventory Sheet.  The pat-down was authorized by SCBPO Jose Marin.  At this time, the subject was escorted to Passport Control Secondary for processing.

MIRANDA WARNING:
The adverse action was administrative and did not require an I-214 Miranda Warning to be issued.

ADVISEMENT OF I-867A/B:
At the Gateway to the Americas, Port of Entry, in Laredo, Texas, subject Temuri KUPRASHVILI was advised of his rights as per official CBP Form I-867A in the Spanish language.  The subject also read the form in the Spanish language.  Subject Temuri KUPRASHVILI stated that he understood his rights and that he was willing to answer any questions regarding his application for admission into the United States.

SWORN STATEMENT:
A sworn statement was taken from the subject by CBPO Francisco Castillo, to which he affirmed his aforementioned request for asylum in the United States.  The subject claimed that he could not return to his native country of Georgia, nor could he be returned to Mexico...(CONTINUED ON NEXT PAGE)

| Signature | | Title |
| FRANCISCO CASTILLO II | | Customs & Border Protection Officer |

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                          Continuation Page for Form I213

| Alien's Name<br>KUPRASHVILI, Temuri | File Number A201661149<br>SIGMA Event: 25052921<br>Event No: LAR1901000426 | Date<br>01/24/2019 |

for fear of transiting through that country as well. He admitted that he did not have
documentation that would allow him to legally enter and stay in the United States, which is
why he is requesting Asylum.

IMMIGRATION HISTORY:
As per CBP Database Queries, the subject has no derogatory immigration history nor illegal
apprehensions.

RECORDS CHECKS:
As per CBP Database Queries, subject has no criminal history and no other derogatory
information was found in CBP databases.

MOTIVATION/INTENT TODAY:
Subject is requesting Political Asylum and expressed fear of returning to his home country
of Georgia.

TERRORIST LINKS:
The subject was interviewed and record checks completed.  No links to terrorism or travel to
countries linked to terrorism or gang affiliation could be established.

CREDIBLE FEAR STATEMENT:
Subject was questioned using CBP form I-867B (Record of Sworn Statement) as to his fear of
being returned to his native country or the country he just departed (Mexico), and the
subject made a statement that he has fear to return to his native country. He also stated
that he feared being returned to Mexico to transit to Georgia.

HEALTH CONDITION:
Subject claims to be in good health. He was provided with food, water, and was allowed to
use the restroom while he was detained.  SIGMA custody log was updated while he was in CBP
custody.

CONSULATE RIGHTS/NOTIFICATION:
Subject was notified of his right, as a non-U.S. Citizen, to have a consular representative
of his country notified of his detention.  When asked if he wanted his consular
representative notified, the subject stated he did not want his consulate notified.

DISPOSITION:
Subject Temuri KUPRASHVILI is inadmissible into the United States pursuant to section
212(a)(7)(A)(i)(I) of the INA and was processed for Expedited Removal-Credible Fear under
the provision of section 235(b)(1) of the INA.  Forms I-860, M-444 (Russian) I-296, and
List of Legal Services were executed and the subject was served with Forms M-444 (Russian)
and List of Legal Services.  Subject was detained pending a Credible Fear Interview, and was
turned over to the custody of ERO (Enforcement Removal Operations).

| Signature<br><br>FRANCISCO CASTILLO II | Title<br><br>Customs & Border Protection Officer |

Form I-831 Continuation Page (Rev. 08/01/07)

DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO APPEAR

In removal proceedings under section 240 of the Immigration and Nationality Act:

File No. A 201 663 149

In the Matter of:

Respondent: __KUPRASHVILI, Temuri_____ currently residing at:

__Tallahatchie County Correctional Facility, 415 U.S. Highway 49 N, Tutwiler, MS 38963__
(Number, street, city and ZIP code)

(Area code and phone number)

☒ You are an arriving alien.
☐ You are an alien present in the United States who has not been admitted or paroled. You are an applicant for admission.
☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that:

1) You are not a citizen or national of the United States.
2) You are a native of Georgia (Soviet) and a citizen of Georgia (Soviet);
3) You applied for admission at POE, Laredo, Gateway to the Americas, TX on 01/23/2019;
4) You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8CFR 208.30   ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

__LaSalle Service Processing Center, 830 Pinehill Road, Jena, LA 71342__
(Complete Address of Immigration Court, including Room Number, if any)

on __TBD____ at __TBD____ to show why you should not be removed from the United States based on the
(Date)          (Time)
charge(s) set forth above.

_____  Frances Quintin
(Signature and Title of Issuing Officer)  Supervisory Asylum Officer

Date __FEB 2 1 2019__

__Houston, TX__
(City and State)

DHS Form I-862 (5/17)    See reverse for important information    Page 1 of 2

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the Department of Homeland Security immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act (the Act).

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855)448-6903.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____            _____
                                                                *(Signature of Respondent)*

_____                                   Date: _____
*(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on 03~07~2019 in the following manner and in compliance with section 239(a)(1) of the Act.

[X] In person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail
[X] Attached is a credible fear worksheet.
[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the English language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____                    _____ DD4304
*(Signature of Respondent if Personally Served)*              *(Signature and Title of Officer)*

DHS Form I-862 (5/17)                                                                                    Page 2 of 2

# Exhibit

# C

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

## Policy 11022.1:  Detainee Transfers

| | |
|---|---|
| **Issue Date:** | **January 4, 2012** |
| **Effective Date:** | **January 4, 2012** |
| **Superseded:** | All Immigration and Customs Enforcement (ICE) documents that reference or provide guidance related to detainee transfers must be revised in accordance with this Directive. |

**Federal Enterprise Architecture Number:**  306-112-002b

1. **Purpose/Background.** This Directive establishes new prioritized transfer determinations that are meant to minimize, to the extent possible, detainee transfers outside the area of responsibility and to provide cost savings to the agency.

   This Directive consolidates and revises existing policies on how field offices make detainee transfer determinations and conducts transfers out of the Area of Responsibility (AOR).  Transfers of detainees within the AOR are not covered by this Directive.

   This Directive establishes responsibilities and procedures for ICE employees who perform detainee transfers and does not govern contract staff.  ICE employees are advised that responsibilities and procedures for contract staff can be found in their respective vendor agreements

2. **Policy.**  All detainee transfers and transfer determinations will be based on a thorough and systematic review of the most current information available.

3. **Definitions.**  The following definitions apply for purposes of this Directive only.

3.1. **Area of Responsibility (AOR).**  The geographic area of responsibility under the authority of a Field Office Director (FOD).

3.2. **Detainee transfer.**  The transfer of a detainee from one AOR to another.  The term does not include intake processing, or the transfer of aliens from facilities that are authorized for less than 72 hours, hold rooms, U.S. Customs and Border Protection Border Patrol stations, or Ports of Entry.  The term detainee transfer does not include the transfer of aliens to staging areas or facilities for the purpose of facilitating a scheduled final removal of aliens from the United States, nor does it include the final removal of aliens from the United States.

3.3. **Immediate family.**  This may include: mothers, fathers, step-parents, foster parents, brothers, sisters, stepbrothers, stepsisters, biological and adopted children, stepchildren, foster children, and spouses, including common-law marriage or civil unions and

2

cohabitating domestic partnerships legally recognized by a state or other governmental entity (e.g. District of Columbia, Puerto Rico, Guam).

3.4.   **Workday(s).** Monday through Friday excluding holidays or other local Enforcement and Removal Operations (ERO)/Executive Office for Immigration Review (EOIR) office closures.

4.   **Responsibilities.**

4.1.   **FODs, Supervisory Immigration Officers, Attorneys, Immigration Officers and Medical Staff** are responsible for complying with the policy and procedures set forth in this Directive.

4.2.   **FODs** are responsible for disseminating and enforcing this Directive and in conjunction with the Office of the Principal Legal Advisor (OPLA), developing protocols with EOIR court administrators within their AOR that ensure a regular exchange of timely and accurate hearing and detainee transfer schedule information.

5.   **Procedures.**

5.1.   **Filing of the Notice to Appear (NTA) for Transfers.** Unless impracticable because of logistical or other compelling factors that delay submission on a temporary or ongoing basis, NTAs will be submitted to EOIR within five (5) workdays of the NTA being served on the alien, or upon the alien entering ICE custody, whichever is later.  Proper submission of an NTA does not require delivery confirmation, receipt or further action by EOIR.  NTAs mailed to EOIR will only require postmark within the five (5) workdays to be considered timely.  All NTAs mailed will utilize a service which tracks mailing and receipt dates.

As a general rule, detainees will not be transferred without the A-Files, T-Files, or work folders.  If an A-File, T-File, or work folder does not accompany the transferred alien, the five (5) workdays provided for submitting the NTA to EOIR will not begin until the appropriate case officer, agent or other ICE employee who submits NTAs to EOIR receives the A-File, T-File or work folder.

5.2.   **Transfer Determinations.**

1)   Unless a transfer is deemed necessary by a FOD or his or her designee under paragraph (3) of this section, ICE Supervisory Immigration Officer(s) will not transfer a detainee when there is documentation to support the following:

a)   Immediate family within the AOR;

b)   An attorney of record (Form G-28, *Notice of Entry of Appearance as Attorney or Accredited Representative* on file) within the AOR;

3

    c) Pending or on-going removal proceedings, where notification of such proceedings has been given, within the AOR; or

    d) Been granted bond or has been scheduled for a bond hearing.

2) The Immigration Officer will conduct a review to determine whether any of these factors exist. Before a transfer is made in a case where one or more of these factors exist, the transfer must be approved at the Assistant Field Office Director level or higher, and the reasons for the transfer must be documented in the detainee's A-File.

3) A transfer may be deemed necessary by a FOD or his or her designee for any of the following reasons:

    a) To provide appropriate medical or mental health care to the detainee.

    b) To fulfill an approved transfer request by the detainee.

    c) For the safety and security of the detainee, other detainees, detention personnel or any ICE employee.

    d) At ICE's discretion, for the convenience of the agency when the venue of EOIR proceedings is different than the venue in which the alien is detained.

    e) To transfer to a more appropriate detention facility based on the detainee's individual circumstances and risk factors.

    f) Termination of facility use due to failure to meet ICE detention standards, lack of sufficient use of the facility by ICE, or emergent situations.

    g) To relieve or prevent facility overcrowding; in such cases, efforts should first be made to identify for transfer those detainees who do not meet any of the criteria listed in section 5.2(1).

4) *Orantes* Class Members.

    a) ICE is prohibited from transferring Salvadoran class members who are not represented by counsel, from the judicial district of their apprehension for at least seven days to afford them the opportunity to secure counsel.

        i) The only exception to this rule applies to class members who are subject to expedited removal final orders. See *Orantes-Hernandez v. Gonzales*, No. 82-01107, Modified Consolidated Injunction, at paragraph 11.b. (C.D. Cal. Nov. 26, 2007).

4

  b) Salvadoran class members who *are* represented by counsel or obtain representation within the seven-day period can be transferred to other locations, but venue remains in the judicial district where each member's counsel is located.

  c) For any questions regarding the treatment of Salvadoran nationals in ICE custody, pursuant to the requirements of the *Orantes* settlement agreement, please contact the local ICE Office of Chief Counsel.

 5) ICE Supervisory Immigration Officers will conduct a thorough review of the most current information available to make all detainee transfer determinations.

**5.3. Notifications in the Event of a Detainee Transfer.**

 1) ICE will ensure that all necessary notifications are made to detainees and their attorneys when detainees are transferred. ICE is not required to notify family members or other third parties of a transfer.

 2) <u>Attorney notification</u>. If a detainee has an attorney of record (Form G-28 on file), the sending field office will:

  a) Notify the attorney that the detainee is being transferred and include the reason for the transfer and the name, location, and telephone number of the new facility as soon as practicable on the day of the transfer, but in no circumstances later than twenty four (24) hours after the transfer occurs.

  b) Document the notification in:

   i) The Detainee Transfer Check List; and

   ii) The appropriate comments screen in ENFORCE.

  c) Delay the notification when there are special security concerns, but only for the period of time justified by those concerns.

  d) Appropriately document concerns in the detainee's A-File and the appropriate comments screen in ENFORCE.

 3) <u>Detainee notification</u>. Immediately prior to transfer, the sending field office will ensure that the detainee is informed, in a language or manner he/she can understand, that he/she is being transferred to another facility and is not being removed (if applicable).

  a) To ensure the safety of ICE personnel, ICE will ensure that specific plans and time schedules are not discussed with detainees and that following notification, the detainee:

5

        i) Is not permitted to make or receive any telephone calls until the detainee reaches the destination facility;

        ii) Does not have contact with any detainee in the general population until the detainee reaches the destination facility; and

        iii) Is notified that upon admission into the receiving facility, the detainee may place a domestic phone call, at no expense to the detainee.

   b) The sending office will ensure that the detainee notification is documented in:

        i) The Detainee Transfer Notification form; and

        ii) The appropriate comments screen in ENFORCE.

   c) At the time of the transfer, ICE will provide the detainee, in writing, the name, address, and telephone number of the facility to which they are being transferred, using the Detainee Transfer Notification form. ICE place a copy of the form in the detainee's A-File.

   d) ICE will make sure that the detainee acknowledges, in writing, that they have received the transfer destination information and that it is their responsibility to notify family members if so desired, upon admission into the receiving facility.

4) <u>EOIR notification</u>. If a detainee has pending proceedings before EOIR, ICE must submit Form I-830, *Notice to EOIR: Alien Address*. If the alien has an appeal pending with Bureau of Immigration Appeals (BIA), the BIA must be notified. In all cases, a copy of Form I-830 will be placed in the A-file.

**5.4.**   **Requests for Bed/Designation Transfers from Field Office to Field Office.**

1) FODs or their designees are responsible for ensuring that field offices which routinely transfer cases:

   a) Establish a means of communication so that receiving field offices provide sending field offices daily information regarding available bed space; and

   b) Provide the names and contact numbers of staff responsible for handling transfers.

2) While field offices are encouraged to communicate directly regarding available bed space, the headquarters Removal Management Division (RMD) is available to assist a field office that has unsuccessfully attempted to locate space.

3) Field offices seeking bed space in other field office jurisdictions should phone the request (or e-mail with a follow-up phone call) with sufficient details of the case to the designated field office contact.

6

4) Once a field office has preliminarily agreed to accept a detainee from another office, ICE will ensure that:

    a) The Form I-216, *Record of Persons and Property Transfer* is completed;

    b) Complete information detailing the alien's criminal history, medical or mental health concerns, or security risks is provided.

    c) Medical or mental health problems or prescribed medications are documented, either on Form USM-553 (or equivalent), *Medical Summary of Federal Prisoner/Alien in Transit*, or Form I-794, *In-Processing Health Screening*, and the form accompanies Form I-216;

    d) Security concerns are outlined on a separate page and attached to Form I-216; and

    e) A copy of the age verification documentation is attached if it is suspected that the detainee is a juvenile.

5) The FOD(s) or their designee(s) will arrange a method of providing medical histories to Intergovernmental Service Agreement (IGSA) facilities if the IGSA requires that the medical unit review medical histories prior to accepting a transfer.

6) The receiving field office will ensure that Form I-216 is reviewed for consistency with information previously communicated. If there are issues that were not previously relayed to the receiving field office, ICE Supervisory Immigration Officers at the receiving field office will ensure that the sending field office is notified that the transfer request may be declined unless the issues are resolved.

7) Once the receiving field office has agreed to accept the transfer of the detainee on Form I-216, the sending field office will communicate a mutually agreeable estimated time of arrival. The sending field office may not substitute any detainee on Form I-216 without prior approval of the receiving field office.

**5.5.  Detainee Transfer Checklist and Transfer Notification Form.**

1) ICE will ensure that both the Detainee Transfer Checklist and Transfer Notification Form are completed and placed in the detainee's A-File or work folder; and that the A-File or work folder accompanies the detainee to the receiving facility.

2) If the Detainee Transfer Checklist cannot be completed prior to transfer, the detainee may be transferred only if the authorized receiving FOD or his or her designee has expressly waived that procedure. The sending field office will note any such waiver in the A-File.

7

**5.6.    A-File.**

1) Prior to transfer, the sending field office will ensure that the A-File is obtained and, in accordance with the appropriate procedures of the ICE Policy Directive titled, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information":

   a)  Forward the A-File to USCIS for consolidation; and

   b)  Attach all documents and forms on the proper side of the A-File.

2) The sending field office will ensure that the A-File includes copies of the following properly executed documents, fastened in the file:

   a)  I-216 and appropriate copies of Form I-77, Baggage Check (or IGSA equivalent);

   b)  Form USM-553 or local Medical Transfer Summary form;

   c)  Copy of Form I-213, *Record of Deportable Alien Form*;

   d)  Original or photocopy of Form I-203/203A, *Order to Detain/Release Alien*;

   e)  Detainee Transfer Checklist;

   f)  Age verification documents (if applicable);

   g)  A copy or printout of all previous Post Order Custody Reviews (POCRs) and travel document requests in a property envelope fastened to the file;

   h)  Classification sheet;

   i)  Charging documents/records of proceedings;

   j)  Certified copies of convictions;

   k)  Fingerprint cards;

   l)  Photographs; and,

   m) Printouts from the Central Index System (CIS), ENFORCE and the FBI NCIC database.

3) If the sending field office is unable to obtain the A-File (and does not have a fully documented Temporary File), the detainee may not be transferred unless the receiving

8

field office, before the transfer takes place, accepts a work folder created by the sending field office that includes, at a minimum:

    a) Certified copies of convictions or information as addressed in section 5.8;

    b) Printouts from the Central Index System (CIS), ENFORCE, and the Federal Bureau of Investigation's (FBI) National Crime Information Center (NCIC) database;

    c) Charging documents/copies of the EOIR record of proceedings;

    d) Photographs and fingerprints;

    e) A Computer Linked Application Information Management System (CLAIMS) printout;

    f) A Treasury Enforcement Communications System (TECS) printout; and

    g) Any other documents reasonably requested by the receiving field office.

4) The sending field office will ensure that the A-File or work folder accompanies the transfer, except for cases where the receiving field office requests that the A-File or work folder be mailed by overnight express to a particular location. If requested, the sending field office will ensure that it is mailed no later than the following business day.

5) The sending field office shall communicate as soon as possible any anticipated significant delays in the arrival time of the detainees or their files.

**5.7.**    **Charging Documents/Record of Proceeding.**

1) Before the transfer, all charging documents will be issued and signed by the individual with signatory authority for the sending field office.

2) If applicable, prior to transfer, all charging documents will be served on the detainee, including, but not limited to:

    a) Form I-862, *Notice to Appear*;

    b) Form I-200, *Warrant of Arrest*;

    c) Form I-205, *Warrant of Removal*;

    d) Form I-286, *Notification of Custody Decision*; and

    e) Form I-826, *Notice of Rights*.

9

3) ICE will ensure that original charging documents or copies, if the originals have been submitted to EOIR (indicating proper service), are included in the A-File. A copy of the charging documents will be provided to the detainee.

**5.8. Certified Copies of Convictions.** A detainee may not be transferred if the certified copies of conviction relating to the charging document are not included in the A-File or work folder, unless the receiving field office has agreed in writing in advance to accept the case. In such instances, the sending field office will provide the Detainee Transfer Checklist point-of-contact names and phone numbers provided for:

1) The person at the sending field office responsible for obtaining the conviction record; and

2) An individual at the respective court or clerk's office where the record is located.

**5.9. Fingerprint Cards.** The sending field office will send the completed fingerprint cards in the A-File or work folder as noted below:

1) The cards will be signed by the alien and the official taking the fingerprints;

2) The cards will be completely filled out except for the address block requesting a disposition from the FBI;

3) The completed cards will be left in the A-File or work folder for the receiving field office to fill in the response address block and submit to the FBI and DHS Biometrics Support Center (when appropriate), unless the detainee is a Room-and-Board case (short-term staging); and

4) One fingerprint card should remain in the A-File or work folder at all times.

**5.10. Photographs.** The sending field office will take four (1 sheet of 4) new, standard booking-size photographs on photo quality paper and include any photos not needed for the transfer in the A-File or work folder.

**5.11. Medical Procedures and Information Required for Transfer.**

1) In advance of the transfer, ICE will ensure that the receiving facility is provided the USM-553 (facsimile or email is acceptable)

2) Transfer of the Detainee's Medical Record.

a) When a detainee is transferred within the ICE Health Service Corps (IHSC) system, IHSC will provide:

i) Form USM-553, or equivalent Medical Transfer Summary, and a copy of the detainee's full medical record; and

---

10

    ii) The full medical record in a sealed envelope or other container labeled with the detainee's name and A-number and marked "MEDICAL CONFIDENTIAL."

  b) When a detainee is transferred to an IGSA detention facility, ICE will ensure that the Transfer Summary will accompany the detainee. Whenever possible, a copy of the full medical record should accompany each detainee during transfer. If the full medical record is not available, it must be sent as soon as possible. FODs will work with IGSAs to make arrangement for the transfer of the full medical record.

3) <u>Medical Transfer Summary</u>.

  a) The sending facility's medical staff will prepare a Medical Transfer Summary that must accompany the detainee. Either Form USM-553 or a facility-specific form may be used, provided it shows:

    i) Tuberculosis (TB) clearance, including Purified Protein Derivative (PPD) with the test dates, and chest x-ray results if the detainee has received a positive PPD reading;

    ii) Current mental and physical health status, including all significant health issues;

    iii) Current medications, with specific instructions for medications that must be administered en route; and

    iv) The name and contact information of the transferring medical official.

  b) The transporting officer may not transport a detainee without the Medical Transfer Summary.

  c) The transporting officer will review the information for completeness and make sure that he or she has the in-transit supplies required to provide to the detainee as indicated on the USM-553 or equivalent Medical Transfer Summary.

  d) Medical information is available to staff only on a need-to-know basis.

    i) Any officer who reviews the Medical Transfer Summary will protect the privacy of the detainee's medical information to the greatest extent possible.

    ii) Personnel may not share medical information unless necessary to safely fulfill transportation responsibilities.

11

    c) The transporting officer will deliver the Medical Transfer Summary to medical personnel, if practicable, or other staff at the receiving facility and will advise them of any medications provided to the detainee in transit.

4) <u>Medical or Psychiatric Alert</u>.

    a) Appropriate medical staff will notify the facility administrator when they determine that a detainee's physical or mental condition requires:

        i) Clearance by the medical staff prior to transfer; or

        ii) Medical escort and specialized care (e.g. dialysis) during transfer.

5) <u>Medications</u>.

    a) Prior to transfer, medical staff will provide the transporting officers instructions and, if applicable, medication(s) for the detainee's care in transit.

    b) Medical staff will ensure that the detainee is transferred with, at a minimum, seven (7) days worth of prescription medications (for TB medications, up to 15 days' supply) to guarantee the continuity of care throughout the transfer and subsequent intake process.

    c) ICE will ensure that medications:

        i) Are placed in a property envelope labeled with the detainee's name and A-number and appropriate administration instructions;

        ii) Accompany the transfer; and

        iii) If unused, are turned over to the receiving medical personnel.

**5.12. Other Transfer Paperwork.**

1) ICE will ensure that no detainee is transferred without a properly executed Form G-391, I-213, I-216, I-203/I-203A, or equivalent. IGSA facilities may use a local form as long as the form provides the required information.

2) ICE Supervisory Immigration Officers will ensure that records are checked to ascertain if the alien has a criminal history, is dangerous, or has an escape record or medical condition. Any information of an adverse nature must be clearly indicated on the Form G-391, I-216, I-203, or equivalent, and the escorting officers will be notified of the risk and warned to take the necessary precautions.

3) Before beginning the transfer or the detail, the escorting and transportation officers will read their instructions and clearly understand the purpose for which the detainee

12

is being removed from the facility. The officers will also discuss emergency contingency plans with a supervisor and/or authorized ICE official before departure.

4) ICE will ensure that Form I-216:

   a) Includes the detainee's name, A-number and detention category;

   b) Indicates if the detainee has a criminal conviction, a history of violence, is an escape risk, or has a medical condition that may require attention during the transfer;

   c) Notes whether the detainee is on prescription medication; and

   d) Indicates the time of arrival estimated by the sending field office.

5) ICE will ensure that Form G-391, I-203/I-203A, or equivalent:

   a) Is properly signed and clearly indicates the name and A-number of the detainee(s);

   b) Indicates the place or places to be escorted; and

   c) Notes the purpose of the trip and other information necessary to efficiently carry out the transfer, or detail.

6) The receiving field office may request that copies of Form I-203/I-203A or I-213 be transmitted directly from the sending field office to the receiving facility.

**5.13.  Property.**

1) Before transfer, the sending facility will ensure that all funds and small valuables are properly documented and closed out on Form G-589/I-77 (or local IGSA property receipt form).

2) If the receiving facility does not accept excess, oversized or bulky belongings (including, but not limited to, suitcases, cartons, televisions, etc.), the sending facility will:

   a) Arrange to store the property elsewhere; or

   b) Process the excess property in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

3) If the detainee refuses to provide an appropriate mailing address, or is financially able but unwilling to pay for shipping, ERO may dispose of the property after providing

13

the detainee written notice in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

5.14.    **Movements via ICE-Managed Aircraft.**  When detainees are being transported by the ERO Flight Operations Unit, ICE will adhere to protocols established for ICE chartered removals

5.15.    **Post Transfer Activities.**

1)  Detainee Phone Calls.

    a)  After admission into the receiving facility the FOD will ensure that all detainees are given the opportunity to make a phone call at the government's expense.

2)  ENFORCE.

    a)  The sending field office will ensure that appropriate screens in ENFORCE are complete, updated, and accurate.

    b)  Once the detainee reaches his or her destination, the receiving field office will update the appropriate screens in ENFORCE.

5.16.    **Quality Assurance Review.**  Consistent with the terms of this Directive, the FOD shall maintain statistics on transfers and have a quality assurance process in place to monitor all transfer decisions.

6.    **Authorities/References.**

6.1.    Immigration and Nationality Act, Pub. L. No. 82-414, §236(a) (1952) (codified as amended at 8 U.S.C. §§ 1101 et seq).

6.2.    ICE Policy Directive No. 1-32.0, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information" (Oct. 2, 2009).

14

7.       **Attachments.**

7.1.    Detainee Transfer Notification.

7.2.    Detainee Transfer Checklist.

8.       **No Private Right Statement.**   This Directive is an internal policy statement of ICE.  It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.


**John Morton**
**Director**
**U.S. Immigration and Customs Enforcement**