UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TEMURI KUPRASHVILI,

                                    Petitioner,

                    -v-

BRYAN FLANAGAN *et al.*,

                                    Respondents.

---

25 Civ. 5268 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On June 7, 2025, Temuri Kuprashvili, a noncitizen from Georgia subject to an order of removal, was arrested outside 26 Federal Plaza by Immigration and Customs Enforcement ("ICE"). Dkt. 1 ("Pet."). Kuprashvili petitions here for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking his release. *Id.* at 6. He claims that his detention by ICE violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause, because, before his arrest, he sought relief under the Violence Against Women Act ("VAWA"), and because, in revoking the order of supervision to which he had been subject prior to his arrest, ICE initially failed to afford him notice of the reasons for the revocation and an interview. Respondents (collectively, "respondents" or "ICE") defend his detention as lawful.

For the reasons that follow, the Court denies the petition. The Court accordingly lifts the stay it had put in place on Kuprashvili's removal during the pendency of the petition.

## I.     Background[1]

### A.     Kuprashvili's Arrival to the United States

Kuprashvili is a citizen of the Republic of Georgia.  *Id.* at 1.  On January 23, 2019, Kuprashvili, then age 21, his mother, father, and younger sibling attempted to enter the United States from Mexico in a rental car.  *Id.* at 8, 26.  The family was stopped by U.S. Customs and Border Protection ("CBP") officials at the customs port of entry in Laredo, Texas.  *Id.* at 26–28.  When officials determined they did not possess valid documentation to enter the United States, Kuprashvili and his family were referred for additional screening.  *Id.* at 28.  A pat-down search of Kuprashvili recovered $300 and 300 Mexican pesos.  *Id.* at 26.  In a later interview with customs officials, Kuprashvili requested political asylum from Georgia and expressed fear of returning to Georgia.  *Id.* at 26–27.  He also expressed fear of being returned to Mexico in the course of being returned to Georgia.  *Id.* at 27.

Kuprashvili was placed into expedited removal proceedings, pursuant to INA § 212(a)(7)(A)(i)(I).  Dkt. 14-1 ("Notice to Appear" or "NTA"); Dkt. 13 ("Mascia Decl.") ¶ 7.  Between January 25 and February 12, 2019, Kuprashvili was detained at the Webb County Detention Center in Laredo, Texas.  *Id.*  On February 12, 2019, Kuprashvili was transferred to Tallahatchie County Correctional Facility in Tutwiler, Mississippi.  *Id.* ¶ 8.

### B.     Immigration Court Decision and First Motion to Reopen

On February 18, 2019, Kuprashvili was scheduled for a credible fear interview, a proceeding in which a noncitizen who is in expedited removal proceedings can raise concerns

---

[1] This account draws on Kuprashvili's petition and exhibits, Dkt. 1; the declaration of supervisory deportation officer Luis Kow, Dkt. 12; the declaration of deportation officer Jason Mascia, Dkt. 13; Kuprashvili's immigration records, Dkts. 14-1 to 14-11; the declaration of Nona Tilley, Kuprashvili's immigration counsel, Dkt. 18; and updates from Kuprashvili and respondents, Dkts. 29–30, 33.

regarding his deportation with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 9; Pet. at 8. Because a Georgian interpreter was not available for his credible fear interview, and Kuprashvili could not effectively communicate in Russian or English, USCIS determined that Kuprashvili would be released with a NTA to avoid "undue delay" and "offer Kuprashvili all possible avenues to have his case heard." Mascia Decl. ¶ 10. On February 21, 2019, USCIS issued an NTA, directing Kuprashvili to appear at the LaSalle Service Processing Center in Jena, Louisiana on a date and time "TBD." Notice to Appear at 1. On March 7, 2019, USCIS served Kuprashvili with the NTA. Mascia Decl. ¶ 10. The NTA provided:

- **Alien Registration**: This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

- **Conduct of the hearing**: At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

  At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

  You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

- **Mandatory Duty to Surrender for Removal**: If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www. ice.gov/contact/ero, as directed by DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or

term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United Stated and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act

Notice to Appear at 2 (cleaned up).

USCIS also served the NTA on the Executive Office for Immigration Review, LaSalle Immigration Court in Jena, Louisiana. Mascia Decl. ¶ 10. Kuprashvili contends that the commencement of proceedings in the LaSalle Immigration Court reflects that he "succeed[ed] in demonstrating a credible fear of returning to [his] home country in Georgia," thereby resulting in him being placed in "regular removal proceedings." Pet. at 8. On March 13, 2019, Kuprashvili was transferred to Bossier Parish Correctional Center in Bossier Parish, Louisiana. Mascia Decl. ¶ 11.

On April 4, 2019, Kuprashvili appeared, *pro se*, for a master calendar hearing, or a brief preliminary hearing to review the NTA, before an Immigration Judge ("IJ") at the LaSalle Immigration Court.[2] *Id.* ¶ 12. Because a Georgian interpreter again was not present, the case was adjourned. *Id.* On April 8, 2019, Kuprashvili appeared again, *pro se*, for a master calendar hearing. *Id.* ¶ 13. The case was again adjourned, this time due to Kuprashvili's request for counsel. *Id.* On May 2, 2019, Kuprashvili filed an application for asylum, I-589, withholding of removal, and protection under the Convention Against Torture ("CAT"). *Id.* ¶ 14. On May 16, 2019, Kuprashvili appeared with counsel, Mekhman Karimov, for a master calendar hearing

---

[2] At such a hearing, an immigration judge may, *inter alia*, advise a noncitizen of his rights during immigration proceedings, review and explain the NTA, and set deadlines. *3.14 Master Calendar Hearing*, Dep't of Justice – Executive Office for Immigration Review.

before an IJ at the LaSalle Immigration Court. *Id.* The allegations in USCIS's NTA were "sustained," and Kuprashvili's case was scheduled for a merits hearing before the LaSalle Immigration Court to commence on June 26, 2019. *Id.* ¶¶ 14–15.

On June 26, 2019, Kuprashvili appeared for his merits hearing, but Karimov, his counsel, did not. *Id.* ¶ 15. After a series of adjournments, on September 20, 2019, a merits hearing was held with both Kuprashvili and Karimov present. *Id.* ¶ 16. Testimony was taken from Kuprashvili and his father. *Id.* On October 10, 2019, the hearing continued. *Id.* On October 11, 2019, in a 30-minute oral ruling, the LaSalle Immigration Court denied Kuprashvili's requests for asylum, withholding of removal, and relief under the CAT, and ordered him removed to Georgia. *Id.* ¶ 18; Dkt. 14-3. The Immigration Court identified "four reasons" to question the credibility of Kuprashvili's witnesses, including the conflicting accounts in Kuprashvili's oral testimony, his father's oral testimony, his father's written declaration, and a sworn statement from his father. *Id.* at 5–6. Kuprashvili did not file a notice of appeal with the BIA within 30 days. Mascia Decl. ¶ 18; Pet. at 9 ("[Kuprashvili] did not timely appeal the IJ's decision challenging the findings predicating the IJ's decision to deny the applications for relief."). Upon expiration of this 30-day period, Kuprashvili's removal order became final. *See* 8 C.F.R. § 1003.38.

On November 12, 2019, Kuprashvili, aided by new counsel Ilona Dzhamgarova, filed a motion to reopen his immigration case, alleging that his prior counsel, Karimov, had been ineffective. Mascia Decl. ¶ 19; Pet. at 9. Kuprashvili argued that he had been prejudiced by Karimov's failures to disclose that Kuprashvili's father had "memory problems" from a head injury and to call his mother or brother as witnesses. Dkt. 14-3 at 5. On November 25, 2019, the LaSalle Immigration Court denied Kuprashvili's motion to open his case based on allegedly

ineffective assistance, finding Kuprashvili had failed to comply with procedures set forth in

*Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988). *Id.* at 4. It also rejected, and termed "entirely

self-serving," Kuprashvili's claim that his father suffered a head injury, noting that his father,

given an opportunity during the hearing to disclose any medical conditions, disclosed none. *Id.*

at 5–6. The court stated that, upon its review of the record, Kuprashvili had not adduced any

"previously unavailable evidence which is material to the case" or "establish[ed] that reopening

is warranted for ineffective assistance of counsel." *Id.* at 8.

On December 2, 2019, Kuprashvili was transferred to the LaSalle Correctional Center in

Olla, Louisiana. Mascia Decl. ¶ 20. That day, Kuprashvili appealed the denial of his motion to

reopen to the Board of Immigration Appeals ("BIA"). *Id.* ¶ 21. On October 19, 2020, the BIA

dismissed that appeal. *Id.* ¶ 25. It held that the Immigration Court had properly denied

Kuprashvili's motion for failure to comply with *Lozada*'s procedural requirements. Dkt. 14-4

at 6. It further held that Kuprashvili's attempt to submit new evidence on appeal was improper,

and that such evidence was unlikely to change the outcome. *Id.* at 7.

On November 18, 2020, Kuprashvili was released from detention on an order of

supervision, which set out the conditions for his release subject to a final order of removal.

Mascia Decl. ¶ 26; Dkt. 14-5 ("Kuprashvili OSUP" or "OSUP"). The OSUP stated that

Kuprashvili had been ordered "[r]emoved pursuant to proceedings commenced on or after

April 1, 1997," and was required to comply with the following conditions:

- "That you appear in person at the time and place specified, upon each and every request of the agency, for identification and for deportation or removal."

- "That upon request of the agency, you appear for medical or psychiatric examination at the expense of the United States Government"

- "That you provide information under oath about your nationality, circumstances, habits, associations and activities and such other information as the agency considers appropriate."

6

- "That you do not travel outside States [sic] of New York for more than 48 hours without first having notified this agency office of the dates and places, and obtaining approval from this agency office of such proposed travel"

- "That you furnish written notice to this agency office of any change of residence or employment 48 hours prior to such change"

- "That you assist U.S. Immigration and Customs Enforcement in obtaining any necessary travel documents."

OSUP at 1, 3. An addendum to the OSUP added conditions, including that Kuprashvili report to 26 Federal Plaza for scheduled check-ins on the "1st business day of the month until otherwise directed." *Id.* at 3.[3]

### C.    Second Motion to Reopen

On November 17, 2023, Kuprashvili filed a second motion to reopen with the LaSalle Immigration Court. Mascia Decl. ¶ 27. By this point, Kuprashvili had married a U.S. citizen, and his wife had filed for an I-130, by which a U.S. citizen can seek to reclassify her noncitizen spouse as an "immediate relative." 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); Mascia Decl. ¶ 27. Kuprashvili's motion to reopen relied on the pending I-130 petition. *Id.*; Dkt. 18 ("Tilley Decl.") ¶ 8.

On July 24, 2024, the LaSalle Immigration Court denied the second motion to reopen, finding that it was "untimely and fails to meet any expectations," "numerically barred and fails to meet any exceptions," and did not include "the appropriate application of relief and any

---

[3] The OSUP addendum also stated that Kuprashvili was required to: "not associate with know [sic] gang members, criminal associates, or be associated with any such activity"; "not commit any crimes while on this Order of Supervision"; "report to any parole or probation officer as required within 5 business days and provide ICE with written verification of the officer's name, address, telephone number, and reporting requirements"; "continue to follow any prescribed doctor's orders whether medical or psychological including taking prescribed medication"; "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document"; and "provide ICE with written responses from the Embassy or Consulate regarding your request." OSUP at 3.

accompanying documents." Dkt. 14-6 at 2. Kuprashvili did not appeal the denial to the BIA. Mascia Decl. ¶ 27.

### D.    VAWA Petition and Third Motion to Reopen

On August 12, 2024, Kuprashvili filed a petition for asylum under VAWA, which permits abused spouses of U.S. citizens to apply for legal immigration status without their abuser's knowledge or consent. *Id.* ¶ 28. Kuprashvili's VAWA petition identified the abusing spouse as the same U.S. citizen spouse who previously had filed the I-130 petition. Tilley Decl. ¶¶ 8, 19; Mascia Decl. ¶¶ 27–28; Dkt. 14-9 at 4 n.1. On August 13, 2024, Kuprashvili received an I-797C ("Notice of Action"), confirming that USCIS had received Kuprashvili's VAWA petition the previous day. Pet. at 17. It stated: "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." *Id.* The Notice of Action further stated:

> We have received the application or petition ("your case") listed above. This notice only shows that your case was filed on the "Received Date" listed above. It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

*Id.*

The Notice of Action also directed Kuprashvili to appear at a USCIS facility on August 18, 2024 for biometric processing in support of his petition. *Id.* at 20. On December 19, 2024, Kuprashvili filed a third motion to reopen with the BIA based on his pending VAWA petition. Mascia Decl. ¶ 28.

### E.    Arrest and Detention

On June 7, 2025, at approximately 10:45 a.m., Kuprashvili was arrested at 7 Elk Street, outside ICE's field office at 26 Federal Plaza. *Id.* ¶ 29. Kuprashvili's immigration counsel represents that "at the time of arrest, [Kuprashvili] had all of his legitimate receipt notices and

prima-facie evidence for VAWA eligibility with him." Tilley Decl. ¶ 22. The arrest warrant for Kuprashvili dated June 7, 2025 was signed by the "Acting Deputy Field Office Director." Dkt. 14-7 at 2.

Between June 7 and 9, 2025, Kuprashvili was held at 26 Federal Plaza. Mascia Decl. ¶ 29. On June 9, 2025, at approximately 11:30 a.m., Kuprashvili was transferred to Orange County Jail in Goshen, New York. *Id.* Kuprashvili arrived there at approximately 1:30 p.m. *Id.*

### F.    Post-Arrest Developments

After Kuprashvili's arrest, he filed a parole request, habeas petition, and received updates on his outstanding motions to reopen and VAWA petitions. These post-arrest developments are summarized below.

### 1.    Parole Applications

On June 10, 2025, Kuprashvili filed a parole request with ICE. *Id.* ¶ 30. On June 24, 2025, ICE prepared an "interim notice" denying the request. Dkt. 14-8. ICE stated that Kuprashvili had "not established to ICE's satisfaction that [he is] not a flight risk" and that he had failed to demonstrate that he is "(1) an alien who has a serious medical condition such that continued detention would not be appropriate; (2) an individual who has been medically certified as pregnant; (3) an alien juvenile; (4) an alien who will be a witness in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States; or (5) an alien whose continued detention is not in the public interest." *Id.* at 2. The notice stated that Kuprashvili could request a "re-determination" based on changed circumstances. *Id.*

On July 10, 2025, ICE finalized a "parole determination worksheet," identifying the bases for denying Kuprashvili parole. Dkt. 30-6 at 1 (cleaned up). Under "additional factors" relevant to whether Kuprashvili should be released, ICE stated that there was a "new [motion to

9

reopen] based on VAWA (pending), Records indicate a possible marriage fraud attempt." *Id.* at 2. On July 13, 2025, Kuprashvili filed a request for re-determination of his parole decision. Dkt. 14-8 at 3.

On March 29, 2026, ICE again denied Kuprashvili's parole request. Dkt. 30-3 at 2. It again observed that Kuprashvili had made a "possible marriage fraud attempt." *Id.*

### 2.    The Instant Habeas Petition

On June 23, 2025, Kuprashvili, proceeding *pro se*, filed the instant habeas petition, naming as respondents Bryan Flanagan, in his official capacity as acting field officer director of ICE, Judith Almodovar, in her official capacity as acting director of ICE's enforcement and removal operations, Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, and Pamela Bondi, in her official capacity as Attorney General.[4] Pet. at 1. On June 27, 2025, a standing order relating to cases filed by *pro se* plaintiffs was entered, directing Kuprashvili to keep the court apprised of new contact information. Dkt. 2. On June 30, 2025, Kuprashvili's petition was assigned to this Court. That day, the Court ordered respondents to detail the date and time at which Kuprashvili was taken into custody, and to not remove him from the United States while this litigation was pending. Dkt. 4. On July 8, 2025, respondents stated that Kuprashvili had been arrested at 10:45 a.m. on June 7, 2025 at 7 Elk Street, and, since June 9, 2025, had been held at the Orange County Jail. Dkt. 7.

---

[4] Kuprashvili filed the petition *pro se*, seeking *in forma pauperis* ("IFP") status. Kuprashvili's petition, however, bears a signature of a person identifying himself as "counsel for petitioner," "Bernal Peter Ojeda" dated June 8, 2025. Pet. at 14. Ojeda is a member of the California bar. Dkt. 22 at 2. On February 20, 2026, Ojeda filed a motion stating that he was "applying for the privilege of *pro hac vice* admission" on behalf of Kuprashvili, "who is appearing pro se." *Id.* at 3. On February 25, 2026, the Court granted Ojeda's motion. Dkt. 23.

On July 31, 2025, the Court ordered respondents to answer within 60 days and provided Kuprashvili 30 days from the date at which he received respondents' opposition to file any reply. Dkt. 10. On September 29, 2025, respondents opposed Kuprashvili's petition. Dkts. 12–15. On November 3, 2025, Kuprashvili replied, including a declaration from his immigration counsel, Nona Tilley. Dkts. 17–19. The Court requested an update from the parties, which they provided on April 14, 2026. Dkts. 29–30, 33.

### 3. Revocation of Kuprashvili's OSUP

On August 31, 2025, ICE determined that it had failed to provide Kuprashvili with notice and an informal interview, on June 7, 2025, upon revocation of his OSUP. Kow Decl. ¶ 8. It stated that the processing specialist assigned to Kuprashvili's case after his arrest:

> did not provide Kuprashvili with the notice or conduct an informal interview. ICE does not have a system that identifies OSUP cases. Rather, officers and processing specialists are required to review the administrative file and databases thoroughly to identify if an individual is subject to OSUP. It is unclear why the specialist who processed Kuprashvili's case did not provide the notice or conduct an interview, but ICE believes that this error was likely the result of the specialist's unfamiliarity with OSUP cases and providing the relevant notice and conducting an interview when an OSUP is revoked, because CBP processing specialists do not encounter OSUP cases as frequently.

*Id.* ¶ 7.

On September 4, 2025 at 9:45 a.m., ICE, to correct that error, served Kuprashvili with written notice that his OSUP was revoked and that he was to be detained "pending removal." Dkt. 14-10 ("Notice"). The Notice stated:

> This letter is to inform you that your order of supervision was revoked and you are detained in the custody of U.S. Immigration and Customs Enforcement (ICE) pending removal. This decision was made based on a review of your official alien registration file and a determination that there were changed circumstances in your case, specifically that ICE is acquiring a travel document on your behalf, and your removal is considered imminent.

11

the filing deadline. *Id.* The BIA also noted that Kuprashvili's motion to reopen was seeking to adjust his status based on marriage to the same U.S. citizen against whom Kuprashvili, soon after the BIA's denial of that motion, made a VAWA claim. *Id.* at 4–5. Third, the BIA found that Kuprashvili's motion to reopen based on changed country conditions "did not mention" that the LaSalle Immigration Court had made an "adverse credibility finding" as to Kuprashvili's and his father's testimony regarding persecution, and was not based on new information. *Id.* at 5. Fourth, the BIA found that Kuprashvili's case did not warrant exercise of its *sua sponte* authority to reopen. *Id.* It stated: "Becoming eligible for relief from removal long after a final administrative order has been entered is common and does not, in itself, constitute an exceptional situation warranting consideration of an untimely motion." *Id.* It denied as moot Kuprashvili's request for a stay of removal. *Id.*

On September 16, 2025, USCIS issued a notice indicating its intent to deny Kuprashvili's pending VAWA petition. Mascia Decl. ¶ 35. It stated that any evidence to overcome the denial must be supplied to USCIS on or before October 20, 2025. *Id.*

### 5.    Custody Reviews Under 8 C.F.R. 241.4(i)

On September 4, 2025, ICE performed a review of Kuprashvili's custody status and determined not to release him from custody. Dkt. 14-11 at 2. It stated that Kuprashvili had "not demonstrated that, if released, [he] will not pose a danger to the community or to the safety of other persons." *Id.* ICE synopsized Kuprashvili's immigration history, including his pending habeas petition. *Id.* at 3. On September 5, 2025, ICE served a copy of the custody review on Kuprashvili at the Orange County Jail. *Id.* at 5.

On February 27, 2026, ICE served Kuprashvili with notice of an upcoming interview for a custody review in March. Dkt. 30-5 at 1.

13

On March 8, 2026, ICE interviewed Kuprashvili to determine whether his continued detention was necessary.  Dkt. 30-2 at 1.  Kuprashvili represented that he has a "stable residence and could work as a home health attendant and Uber driver"; and that "he would not pose a threat to the community and would cooperate with all conditions of release."  *Id.*  The panel, however, found detention warranted, based on the "significant likelihood" of Kuprashvili's removal "in the foreseeable future."  *Id.*

### 6. Request for a Bond Hearing

On March 17, 2026, Kuprashvili, proceeding *pro se*, filed a request for an immediate bond hearing.  Dkt. 26.  He stated that his detention violated due process, and that he had "an approved I-360 petition," or VAWA petition, and was awaiting further processing.  *Id.* ¶¶ 2–4.

On April 15, 2026, Kuprashvili's counsel clarified that Kuprashvili is "not seeking to impose a bond-hearing regime . . . he instead seeks traditional habeas relief—outright release."  Dkt. 33 at 2.

## II.  Applicable Legal Standards

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "This includes claims by non-citizens challenging the constitutionality of their detention."  *Cabral v. Decker*, 331 F. Supp. 3d 255, 258 (S.D.N.Y. 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *see Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *Qasemi v. Francis*, No. 25 Civ. 10029, 2025 WL 3654098, at *3 (S.D.N.Y. Dec. 17, 2025).

14

## III.    Discussion

Kuprashvili challenges the revocation of his OSUP and his arrest, resulting in his being taken into ICE detention pending removal. Reply at 11–12. He argues that his pending VAWA petition and motion before the BIA to re-open entitled him to an "automatic stay" of removal, and that the revocation of the OSUP and his detention breached the INA and his right to due process. Pet. at 3–5. Respondents counter that the Court lacks jurisdiction to stay ICE from pursuing removal and that, on the merits, Kuprashvili's arrest and detention to affect his removal order were lawful. Opp'n at 16–23.

Kuprashvili's petition and ensuing filings raise, in sequence, three questions. First, is his detention governed by § 1226(a), which governs discretionary detention, or § 1231(a), which applies to noncitizens ordered removed? Second, insofar as ICE initially failed, in revoking Kuprashvili's OSUP, to comply with procedural protections (notice and an informal interview) that are required by regulation and as a matter of due process, was that lapse remedied by ICE's later provision of those procedural protections? And finally, is Kuprashvili today entitled to a bond hearing to determine whether he presents a risk of flight or a danger to the community?

### A.    Whether Kuprashvili Is Detained Under §§ 1226 or 1231(a)

Kuprashvili argues that his detention falls under § 1226(a) because the BIA, as of his arrest, had not yet ruled on his third motion to reopen removal proceedings. Reply at 3. He argues that, under § 1226(a), it was illegal for ICE to detain him to effectuate a final removal order. Id. at 3–4. Respondents counter that Kuprashvili, being subject to an administratively final order of removal, was lawfully re-detained under § 1231(a)(6). Opp'n. at 6, 11–12. Respondents are correct.

15

Under § 1226, the Attorney General is authorized to detain a noncitizen already in the United States pending the outcome of removal proceedings. Section 1226 applies "*before* the removal period" and governs "the detention of those aliens who 'are not immediately deportable.'" *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 185 (W.D.N.Y. 2020) (emphasis in original) (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018), *as amended* (May 22, 2018)). Thus, "discretionary" detention under § 1226 applies to noncitizens only "during removal proceedings." *Reynoso v. Aviles*, 87 F. Supp. 3d 549, 552 (S.D.N.Y. 2015) (§ 1226 governs a noncitizen's detention "while removal proceedings are *pending*" (emphasis added)); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 469–75 (S.D.N.Y. 2025) (finding noncitizen with pending removal proceedings and asylum claims was re-detained under § 1226); *J.G.O. v. Francis*, No. 25 Civ. 7233, 2025 WL 3040142, at *4–5 (S.D.N.Y. Oct. 28, 2025) (contrasting §§ 1226 with 1225, which governs detention prior to a noncitizen being paroled into the United States); *Esperanza v. Francis*, No. 25 Civ. 8727, 2025 WL 3513983, at *6 (S.D.N.Y. Dec. 6, 2025) (same).

Once an individual has been "ordered removed," however, his detention and removal are governed by § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022); *Hechavarria*, 891 F.3d at 54. Salient here, § 1231(a)(1)(B) identifies three triggering events, the latest of which commences the removal period:

> (i)     The date the order of removal becomes administratively final.
>
> (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.*

As to the first triggering event, an order of removal becomes administratively final at the earlier of either "a determination by the [BIA] affirming such order," or "the expiration of the period in which the alien is permitted to" petition the BIA for review of the order. *Riley v. Bondi*, 606 U.S. 259, 267 (2025) (quoting § 1101(a)(47)(B)); *E.M.M. v. Almodovar*, 2025 WL 3077995, at *2–3 (S.D.N.Y. Nov. 4, 2025). After the 90-day removal period expires, § 1231(a)(6) authorizes the detention of three classes of persons "beyond the removal period": noncitizens who are (1) inadmissible, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal. *Lim v. Arteta*, No. 26 Civ. 461, 2026 WL 192490, at *1 (S.D.N.Y. Jan. 26, 2026) (quoting § 1231(a)(6)). Only where a noncitizen subject to a final order of removal has filed a petition for review with the appropriate court of appeals and received a stay from that court, is detention under § 1231(a) displaced. *See J.L. v. Decker*, No. 22 Civ. 2853, 2024 WL 232115, at *1 (S.D.N.Y. Jan. 22, 2024) ("[u]nless and until the Second Circuit issues a stay of Petitioner's removal, his detention will remain authorized under Section 1231(a)"), *appeal dismissed sub nom.*, 2024 WL 3102857 (2d Cir. June 13, 2024); *Hechavarria*, 891 F.3d at 55–56; *Narain v. Searls*, No. 19 Civ. 6361, 2020 WL 95425, at *3 (W.D.N.Y. Jan. 8, 2020).

Filing a petition to reopen removal before the BIA, therefore, does not, in and of itself, bar execution of a final order of removal.[5] *See Brathwaite*, 475 F. Supp. 3d at 186; *Zhao v. U.S.*

---

[5] Section 1229(c)(7)(A) limits an alien to "one motion to reopen proceedings under this section," but does not limit the filing of a later motion to reopen based on VAWA. Kuprashvili has filed three motions to reopen. His first, on grounds of ineffective assistance, was filed November 12, 2019 and denied November 25, 2019. Mascia Decl. ¶ 19. His second, on grounds of a pending

*Dep't of Just.*, 265 F.3d 83, 96 (2d Cir. 2001) ("'the filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case,' but rather, a stay of deportation must be specifically granted" (quoting 8 C.F.R. § 3.2(f))); *Francis v. McElroy*, No. 95 Civ. 4663, 1996 WL 497025, at *4 (S.D.N.Y. Aug. 30, 1996) ("the pendency of a motion to reopen does not result automatically in a stay of deportation"); *Agoro v. United States*, No. 11 Civ. 181, 2011 WL 672415, at *3 (S.D.N.Y. Feb. 24, 2011) (finding that filing of a motion to reopen does not toll the time for filing a petition for review of the BIA's final order of removal).

Here, Kuprashvili's detention is properly subject to § 1231(a)(6). Kuprashvili concedes he has a "final order of removal" entered against him, and that he did not timely appeal that order. Pet. at 2, 9. And the record does not reflect an attempt by Kuprashvili to appeal his removal order to the Second Circuit. *See Hechavarria*, 891 F.3d at 55–56. It is thus undisputed that Kuprashvili's order of removal is "administratively final." *Riley*, 606 U.S. at 267. As such, Kuprashvili's detention is governed by § 1231(a)(6), which permits re-detention of "[a]n alien ordered removed" at the discretion of the Attorney General. *See Johnson*, 596 U.S. at 578; *Hechavarria*, 891 F.3d at 54.; *Castejon-Paz*, 143 F.4th at 117.

Kuprashvili counters that his third motion to reopen, based on VAWA, made his removal proceedings "pending," so as to bring him within § 1226. That is wrong. The mere filing of a motion to reopen (let alone a third) does not stay the execution of a final order of removal.[6] *See*

---

I-130, was filed November 17, 2023 and denied July 24, 2024. *Id.* ¶ 27. His third, on grounds of a pending VAWA petition, was filed December 19, 2024. *Id.* ¶ 28.

[6] Kuprashvili is also wrong to suggest that his filing of the VAWA petition stayed his removal proceedings. *See* Pet. at 9–11. He states that "USCIS" made a "finding" that his "VAWA petition for [a] special immigrant visa . . . demonstrated statutory prima facie eligibility," so as to stay his removal pending the resolution of the motion to reopen based on the VAWA petition. *Id.* at 3–4 (citing Exhibit A). That is wrong. The document to which Kuprashvili points is merely the "Notice of Action" which USCIS issued the day after Kuprashvili filed his VAWA petition. *Id.* at 17–20. That Notice states that it "does not grant any immigration status or

18

*Zhao*, 265 F.3d at 96; *Francis*, 1996 WL 497025, at *4. And, as Kuprashvili concedes, his first, timely motion to reopen proceedings as to this order was denied, Pet. at 2, and was not appealed, let alone stayed while on appeal. This case thus does not present the situation in which a non-citizen's removal has been "stayed pending judicial review," in which circumstance § 1231(a) does not apply. *Hechavarria*, 891 F.3d at 55–56 (§ 1231 presupposes that removal is "imminent and certain," and that "no substantive impediments remain to the immigrant's removal"). Accordingly, Kuprashvili's detention is governed by § 1231(a)(6). *See also Fajardo v. Decker*, No. 22 Civ. 3014 (PAE), 2022 WL 17414471, at *7 (S.D.N.Y. Dec. 5, 2022); *Villatoro v. Joyce*, No. 22 Civ. 6270, 2024 WL 68533, at *3 (S.D.N.Y. Jan. 5, 2024).

### B.    Whether ICE Cured Any Procedural Defect by Belatedly Providing Kuprashvili with Notice and an Informal Interview

Kuprashvili separately argues that ICE violated his due process rights when it failed to follow its own regulations, which required the agency to afford a noncitizen notice and an informal interview promptly upon revoking an OSUP. Reply at 11–12.[7] Respondents concede failing to do so initially. However, they argue, they later cured this deficiency by giving Kuprashvili written notice and an informal interview, such that there is no basis for granting him further relief. Opp'n at 22–23.

Under § 1231(a), a noncitizen may be released subject to an OSUP where his removal cannot be timely executed. 8 U.S.C. § 1231(a)(3)(A)–(D). The OSUP sets out, *inter alia*, a

---

benefit"; on the contrary, it notified that Kuprashvili was required to complete certain necessary steps (such as biometric processing) before his petition could even be considered complete. *Id.* at 17. Kuprashvili therefore has not adduced any evidence that USCIS has found him "prima facie eligib[le]" for a stay of removal.

[7] In opposing the procedure belatedly supplied by ICE, Kuprashvili initially directed his arguments to the "decision to continue custody" issued by ICE, Dkt. 29 at 1–2, while later clarifying that even the later-supplied informal interview was insufficient, Dkt. 33 at 1–2.

noncitizen's "reporting requirements, limitations on travel without prior ICE approval, and a mandate that the alien continue efforts to obtain a travel document and assist [ICE] in obtaining a travel document." *Yusov v. Shaughnessey*, 671 F. Supp. 2d 523, 527 (S.D.N.Y. 2009) (cleaned up), *aff'd sub nom. Yusov v. Shaughnessy*, 396 F. App'x 780 (2d Cir. 2010) (summary order); 8 C.F.R. § 241.5(a).

Salient here, 8 C.F.R. § 241.4(*l*) sets out the process ICE must follow in revoking an OSUP. *See* 8 C.F.R. § 241.4(*l*); *Funes v. Francis*, 810 F. Supp. 3d 472, 489 (S.D.N.Y 2025). It states that:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. *The alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.*

8 C.F.R. § 241.4(*l*)(1) (emphasis added). These procedures thus entail notification of the reasons for the revocation followed by an informal interview. As this Court has recently reviewed, these procedural safeguards apply regardless of whether the OSUP is revoked based on a violation of a condition of supervision or for other reasons (*e.g.*, policy grounds). *See Funes*, 810 F. Supp. 3d at 489–91 (collecting cases); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 412 (S.D.N.Y. 2025); *Ndoye v. Joyce*, No. 25 Civ. 8856, 2026 WL 306387, at *4–5 (S.D.N.Y. Feb. 5, 2026); *Lim*, 2026 WL 192490, at *2.

In general, where an error is of a procedural nature such as the denial of notice and an informal interview, "it [is] resolved with a procedural remedy" that furnishes the aggrieved party with the missed procedures. *Nicholson v. Williams*, 203 F. Supp. 2d 153, 241 (E.D.N.Y. 2002). "Generally, procedural errors in deportation proceedings are cured by holding a new [proceeding] in compliance with the requirements of due process." *De Cardenas v. Reno*, 278 F. Supp. 2d 284, 294 (D. Conn. 2003). Such a remedy may be inadequate when the procedural

defect "also resulted in the loss of an opportunity for statutory relief." *Id.* Otherwise, however, courts resolving habeas petitioners have generally declined to award additional relief. *See id.*; *United States v. Martinez-Castillo*, No. 23 Cr. 205, 2023 WL 4764025, at *5 (S.D.N.Y. July 26, 2023) (impact of "procedural error" in immigration proceedings is determined on a case-specific basis depending on all relevant circumstances).

It is undisputed that respondents failed to provide Kuprashvili with notice and an informal interview before revoking his OSUP. Mascia Decl. ¶ 32; Opp'n. at 22. It is, however, also undisputed that respondents provided Kuprashvili with written notice (the Notice), and an informal interview, some three months later, on September 4, 2025. *Id.* And Kuprashvili does not dispute that these procedures occurred—he acknowledges that the Notice identified the basis for the revocation and that he received an interview the same day. *See* Notice at 4; Reply at 11–12. He argues, however, that he is entitled to habeas relief on account of the belated notice and interview. Dkt. 33 at 1–2.

To assess this argument, the Court examines the arguments available to Kuprashvili on June 7, 2025 (when he was arrested and the OSUP revoked) and September 4, 2025 (when ICE afforded him the proper procedures), and whether the ICE's procedural lapse at the time of the revocation denied Kuprashvili an opportunity for statutory relief.

Kuprashvili notes that, as of the revocation of his OSUP, he had pending a VAWA petition and a third motion to reopen. Pet. at 3–10. But, contrary to Kuprashvili's characterization, the VAWA petition had not been "found to have demonstrated statutory prima facie eligibility"; on the contrary, the notice he received after filing that petition expressly stated that it did not confer on him any immigration status or benefit. Pet. at 17. The VAWA petition thus did not preclude the revocation. And the filing of a motion to reopen in and of itself

likewise does not stay proceedings—and would not preclude revocation of an OSUP—where a final order of removal has been entered. *See Zhao*, 265 F.3d at 96; *Francis*, 1996 WL 497025, at *4.

And the OSUP's revocation did not impair Kuprashvili's ability to pursue either form of relief. Kuprashvili does not claim that, between June 7 and September 4, 2025, there was any material development with respect to his VAWA petition, let alone an adverse action traceable to his being in custody.[8] Nor does Kuprashvili trace the BIA's denial of his third motion to reopen on August 21, 2025 to the intervening revocation of his OSUP. And when Kuprashvili belatedly was given notice of the reasons for revocation of the OSUP and an informal interview at which to contest these, ICE was unpersuaded to change course. Thus, although ICE surely erred in failing to timely comply with 8 C.F.R. § 241.4(*l*), there is no basis to find that Kuprashvili was disadvantaged by the delay.

Under these circumstances, ICE's provision of the process required by § 241.4(*l*) was a sufficient remedy for its error. The Court cannot find that Kuprashvili would be in any better position today had ICE complied with that regulation in June 2025. This case thus contrasts with *Funes v. Francis*, where the agency had never remedied this lapse, and where the noncitizen had "substantial arguments" available to her why ICE should exercise its discretion not to revoke her OSUP, including a pending derivative asylum application, reasonable fear interview, and Second Circuit challenge to her removal order. *See* 810 F. Supp. 3d at 500.

---

[8] Kuprashvili has not substantiated his assertion in his September 4, 2025 informal interview that his "pending VAWA" was approved. Dkt. 14-10 at 5. Respondents state that on September 16, 2025, USCIS issued a notice of intent to deny the VAWA petition. Mascia Decl. ¶ 35.

### C.    Whether Due Process Requires a Bond Hearing or Release

Kuprashvili originally sought a bond hearing, Dkt. 26, but his counsel later clarified that he is not seeking a bond hearing, but instead, outright release, Dkt. 33 at 22.  As respondents recognize, however, under § 1231(a)(6), Kuprashvili is not entitled to either form of relief.

Kuprashvili's bid for such relief is largely premised on the applicability to him of § 1226. For non-citizens detained under § 1226, "due process bars the Executive from detaining . . . individuals for an unreasonably prolonged period . . . without a bond hearing." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024); *see also Yao*, 813 F. Supp. 3d at 477.  In such circumstances, courts, in appropriate cases, have ordered the non-citizen's immediate release. *See, e.g.*, *Tumba v. Francis*, 813 F. Supp. 3d 394, 406–07 (S.D.N.Y. 2025) (ordering immediate release from detention under § 1226 that violated due process); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497–98 (S.D.N.Y. Aug. 13, 2025) (same); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5228, 2025 WL 1927931, *3–4 (S.D.N.Y. July 13, 2025) (same).

For the reasons examined above, however, Kuprashvili is detained under § 1231(a)(6). And, for non-citizens detained under that provision, "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community." *Johnson*, 596 U.S. at 581.  The issue instead is the likelihood of removal in the reasonably foreseeable future.  A noncitizen subject to a final removal order may be presumptively detained for six months, after which point, if he provides good reason to believe there is no "significant likelihood" of removal in the reasonably foreseeable future, the government must furnish evidence sufficient to rebut that showing.  *Zadvydas*, 533 U.S. at 701–

23

02; *Callender v. Shanahan*, 281 F. Supp. 3d 428, 436 (S.D.N.Y. 2017) ("Regardless of the length of the detention to date, '*Zadvydas* places the burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future on the alien.'" (quoting *Agoro v. Dist. Dir. for Immigr. Custom Enf't*, No. 9 Civ. 8111, 2010 WL 9976, at *4 (S.D.N.Y. Jan. 4, 2010), *aff'd*, 403 F. App'x 536 (2d Cir. 2010) (summary order))).[9]

Insofar as he is held under § 1231(a), Kuprashvili is not entitled to a bond hearing. *See Johnson*, 596 U.S. at 581; *Black*, 103 F.4th at 148 n.19. Nor has he met his burden under *Zadvydas* to show that there is no "significant likelihood" of his removal, so as potentially to warrant his outright release. 533 U.S. at 701–02. To the contrary, ICE states that there are "no other impediments to [Kuprashvili's] removal other than this Court's order staying [his] removal." Dkt. 30 at 2. It represents that it "has secured a travel document and is ready and able to execute [Kuprashvili's] removal promptly once the Court's stay is vacated." *Id.* And Kuprashvili "does not presently dispute that a travel document has issued." Dkt. 33 at 2. There is thus no charter for immediate release. *See Khemlal v. Shanahan*, No. 14 Civ. 5186, 2014 WL 5020596, at *5 (S.D.N.Y. Oct. 8, 2014) (finding 24-month detention under § 1231 did not violate due process); *Leslie v. Mule*, 323 F. App'x 29, 30 (2d Cir. 2011) (summary order) (affirming denial of habeas petition challenging 44-month detention under § 1231); *Loachamin v. Kurzdorfer*, 792 F. Supp. 3d 353, 363 (W.D.N.Y. 2025) (finding 10-month detention under § 1231 reasonable); *Ghirawoo v. Freden*, No. 24 Civ. 217, 2024 WL 4026984, at *4 (W.D.N.Y. Aug. 29, 2024) (finding approximately 12-month detention under § 1231 reasonable where ICE was in "the process" of obtaining travel documents to carry out removal); *Abimbola v. Ridge*,

---

[9] Under 8 C.F.R. § 241.4(i), ICE is required to perform a custody review at 90 days and to periodically re-evaluate whether continued detention is warranted. Kuprashvili received such a review on September 4, 2025, Dkt. 14-11 at 2–3, and another on March 8, 2026, Dkt. 30-2.

181 F. App'x 97, 99 (2d Cir. 2006) (summary order) (finding over 24-month detention under § 1231 reasonable).

Kuprashvili makes two counterarguments.

First, he argues that ICE's ability to effectuate removal (upon this Court's lift of the litigation stay) is no matter. Dkt. 33 at 2. Under *Zadvydas*'s due process inquiry, that is wrong. Where ICE has demonstrated a significant likelihood of removal—as by obtaining travel documents or demonstrating consular relations with the country to which the noncitizen is to be removed—continued detention does not violate the noncitizen's rights under *Zadvydas*. *See, e.g.*, *Leslie*, 423 F. App'x at 30; *Portillo v. Decker*, No. 21 Civ. 9506 (PAE), 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022) (finding no *Zadvydas* violation where government demonstrated consular relations with Honduras and that it stood "at the ready to remove [noncitizen] once court-authorized to do so"); *Leslie v. Herrion*, 677 F. Supp. 2d 651, 653 (W.D.N.Y. 2010).

Second, Kuprashvili contends that his removal is not imminent because he has a pending I-485 interview arising from an application he has submitted for an adjustment-of-status. Dkt. 29 at 3 (citing notice to this effect of interview scheduled for April 30, 2026). Kuprashvili, however, does not cite any authority under which the scheduling of such an interview would justify release on a habeas petition.[10]

### D.    Additional Relief Sought

Because Kuprashvili's habeas petition is meritless, there is no charter for the Court to order the additional relief he seeks: to enjoin his transfer out of the New York area and/or to

---

[10] To the extent Kuprashvili implies that his removal should be stayed pending resolution of that application, that relief, which would not alter his custodial status, would not sound in habeas. He is at liberty to so move before the Second Circuit, but does not appear to have done so. *See J.L.*, 2024 WL 232115, at *1; *Hechavarria*, 891 F.3d at 55–56; *Narain*, 2020 WL 95425, at *3.

declare that his future detention would violate due process.  Pet. at 11; *see Gooden v. Gonzales*, 162 F. App'x 28, 30 (2d Cir. 2005) (summary order); *Gonzalez-Reyes v. Decker*, No. 20 Civ. 2639, 2020 WL 7869549, at *8–12 (S.D.N.Y. Dec. 31, 2020); *Elder Leondani Vasquez Salgado v. Francis et al.*, No. 25 Civ. 6524, 2026 WL 915304, at *8 (S.D.N.Y. Apr. 3, 2026) (denying challenge to conditions of future detention as not yet ripe for adjudication).

## CONCLUSION

For the foregoing reasons, the Court denies Kuprashvili's petition for a writ of habeas corpus.  The Clerk of Court is respectfully directed to close this case.  In light of the termination of this litigation, the Court lifts the stay it had imposed, for the duration of the litigation, on ICE's removal of Kuprashvili.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: April 20, 2026
New York, New York

26